## SAMUEL G. M. GATES v. NELSON NELLES.

*Partnership—Offer by one partner to buy or sell to the other the firm assets and business on basis of stated valuation—Purchaser to assume firm debts, and secure payment of same and of purchase price—Does not become a completed contract by written acceptance of offer—Coupled with statement that partner accepting sells his interest to the other partner on the terms mentioned in his proposition—Offer looked towards further agreement as to security—And was only one of the steps leading to a sale—And contemplated a future meeting of the parties and completion of sale.*

Complainant and defendant were copartners, and prior to June 22, 1885, had been negotiating for the purchase by one or the other of his copartner's interest in the firm assets and business, with the understanding that a valuation should be placed upon the property, over and above the firm debts and liabilities, to serve as a *basis* for an offer on either side to buy or sell. During these negotiations, which were *verbal*, and on June 22, 1885, complainant made a *written* offer to defendant to buy or sell on the basis of $16,500, the purchaser to assume all company liabilities, and give sufficient security for their payment and of the purchase price. Defendant on the next day accepted com-

plainant's offer in *writing*, on the terms mentioned therein, and afterwards claimed that the letters constituted a *complete* sale, and refused to have anything more to do with the joint business.

*Held*, that the letters did not constitute a *completed* sale; that complainant's offer looked towards further agreements as to security for the purchase price and indemnity for the payment of the firm debts, and was only *one* of the steps *leading* to a sale, and contemplated a meeting of the parties, if accepted, and a completion of the transaction.[1]

Appeal from Bay. (Green, J.) Argued July 7, 1886. Decided July 15, 1886.

Bill filed to dissolve a partnership and for an accounting. Complainant appeals. Decree reversed. The facts are stated in the opinion and head-note.

*Holmes & Collins* (*Benton Hanchett*, of counsel), for complainant:

A contract by correspondence, to be binding, implies the exact meeting of the minds of the parties as to its terms and incidents: *Kyle v. Kavanagh*, 103 Mass. 356; 1 Parsons on Contracts (6th ed.), 475–485; Fry on Specific Performance of Contracts, §§ 221–2, and note.

The terms of the offer and acceptance must have been understood in the same sense by each party: *Utley v. Donaldson*, 94 U. S. 47; *Coles v. Bowne*, 10 Paige, 526.

The parties must have understood that in making the offer and acceptance they were in fact *making* a contract, and not stating or carrying on negotiations leading, or which might lead, thereto: *Lyman v. Robinson*, 14 Allen, 242–254; *Moulton v. Kershaw*, 59 Wis. 316.

The offer and acceptance must have been so complete as to leave no essential matter open for further consideration: *Brown v. N. Y. Central R. R. Co.*, 44 N. Y. 79; *Gates v. Gamble*, 53 Mich. 181.

There must be no misunderstanding as to the subject-matter of the contract: *National Bank v. Hall*, 101 U. S. 49, 50; *Coles v. Bowne*, 10 Paige, 526; *Bruce v. Pearson*, 3 Johns. (N. Y.) 534; *Crane v. Partland*, 9 Mich. 493.

The acceptance must be absolute and unconditional of what is proposed, and of nothing else; and the offer and acceptance must, in and of themselves, complete the transac-

---

[1] See *Wardell v. Williams*, 62 Mich. 50; *Sheffield v. Linn*, Id. 151.

tion, without the necessity of further assignment or act of performance: *Johnson v. Stephenson*, 26 Mich. 63 ; *Eggleston v. Wagner*, 46 Id. 610 ; *Éliason v. Henshaw*, 4 Wheat. 225.

*Simonson, Gillett & Courtright*, for defendant :

Courts cannot make contracts for parties : 2 Parsons on Contracts, 560 ; *Mich. College of Medicine v. Charlesworth*, 54 Mich. 522–9 ; *Thayer v. Augustine*, 55 Id. 187–9.

The intention of the parties is to be ascertained from the *entire* written agreement, construed as a *whole* by the court : *Bronson v. Green*, Walker's Ch. 56 ; *Paddack v. Pardee*, 1 Mich. 421 ; *Thompson v. Richards*, 14 Id. 172 ; *Grant v. Merchants'*, etc., *Bank*, 35 Id. 515 ; *McKenzie v. Sykes*, 47 Id. 294.

In the absence of fraud a party is bound by his written agreement, even though he may have misunderstood its legal effect : *Holmes v. Hall*, 8 Mich. 66.

Contracts are frequently made by correspondence, and if the party receiving a written offer, with due dispatch, unconditionally accepts it in writing, the contract is made. If such an offer comes through the mail, and the party receiving it deposits in the post-office an unconditional acceptance thereof, properly addressed, and postage prepaid thereon, the bargain is complete, even though the acceptance is never received by the person making such offer : *Vassar v. Camp*, 11 N. Y. 441 ; *Trevor v. Wood*, 36 Id. 307 ; *Washburn v. Fletcher*, 42 Wis. 152 ; *Brisban v. Boyd*, 4 Paige. 17 ; *Mactier's Admrs. v. Frith*, 6 Wend. 106 ; *Philadelphia Whiting Co. v. Detroit White Lead Works*, 58 Mich. 29.

If an offer and acceptance by correspondence constitute a complete contract, it will take effect in spite of a statement in the offer or acceptance that a formal contract will be drawn up : *Bonnewell v. Jenkins*, 38 L. T. (N. S.) 581 ; *Bransom v. Stannard*, 41 Id. 434.

All prior and contemporaneous agreements are merged in a written contract, and parol evidence is inadmissible to vary or contradict the terms of the writing : *Philadelphia Whiting Co. v. Detroit White Lead Works*, 58 Mich. 29 ; *Stange v. Wilson*, 17 Id. 342 ; *Coon v. Spaulding*, 47 Id. 162 ; *Columbus Sewer Pipe Co. v. Ganser*, 58 Id. 385.

This is particularly true of contracts which the statute of frauds requires to be in writing : *McEwan v. Ortman*, 34 Mich. 326 ; *Rawdon v. Dodge*, 40 Id. 697.

The rule is the same in equity as at law: *Forsythe v. Kimball*, 91 U. S. 291.

Complainant's offer falls within this statute, in that it required defendant to answer for the debts of the firm: *Waldo v. Simonson*, 18 Mich. 345; *Wagner v. Egleston*, 49 Id. 222.

*Isaac Marston*, of counsel for defendant:

It may be said that this is not an *absolute* sale, and that the title did not pass, it being a mere agreement to sell; but such an agreement would be valid as an executory agreement: Benj. on Sales, §§ 308–9.

Where the time of payment is not fixed, the law allows a reasonable time, and so of any other uncertainty: *Stange v. Wilson*, 17 Mich. 342; *Spaulding v. Coon*, 50 Id. 624; *Adams v. Wood*, 51 Id. 415.

Nelles could waive the giving of security by Gates, and this may be express or implied from the circumstances: Benj. on Sales, § 566; *Russell v. Minor*, 22 Wend. 664, and cases cited.

A sale for approved indorsed paper means, in law, a sale for paper which ought to be approved, and not for paper such as the seller may approve: *Guier v. Page*, 4 S. &. R. 1.

Where payment for land is to be made by good notes, secured by mortgage on the premises, the notes must be good without the mortgage: *Winslow v. Copeland*, 3 Shepley, 276.

As to goods sold at auction, to be paid for in approved indorsed notes, see *Haggerty v. Palmer*, 6 Johns. Ch. 437.

As to contracts by letter or telegram, see *Mactier's Admrs. v. Frith*, 6 Wend. 103; *Trevor v. Wood*, 36 N. Y. 307.

MORSE, J. The complainant was in partnership with one William L. Fay, in the business of buying and selling lumber, at Toledo, Ohio.

About June 1, 1883, the defendant bought Fay out, it being one-half of the business, giving notes therefor to the amount of $21,000. Gates indorsed the notes for Nelles. There were seven of the notes, one payable yearly, the last one becoming due on or before July 1, 1889.

Upon the same day, in consideration that Gates would pay one-half of these notes, Nelles sold to him one-half of his interest, so that Gates then owned three-quarters and Nelles

one-quarter of the business. A written agreement of copartnership was also executed between them, to be carried on under the firm name of S. G. M. Gates & Co., to continue for the term of three years, and the capital stock to be $42,000, and each to have the interest above stated. It was stipulated in said articles of agreement that neither party should transfer his interest in the business without the consent of the other, and that the payment of the Fay notes, to be paid one-half by each, should be provided for before any disposition should be made of said business, or any dissolution of the partnership take place.

Thereupon the parties carried on the business together until about the twenty-third day of June, 1885. Both Gates and Nelles resided in Bay county, in this State, and employed persons to run the lumber-yard at Toledo. Both of them, however, had full knowledge of the business carried on at said yard.

The business did not result profitably, but in a loss. In the months of May and June, 1885, the value of the assets of said firm over and above its debts was not to exceed $16,500, not taking into account the Fay notes, which were not a firm indebtedness, and both of the copartners equally understood the condition of the firm financially. On or about the twentieth of June, 1885, the indebtedness of the firm was about $31,000, the value of the debts owing to the firm about $17,500, and the property of the firm was worth about $31,300, consisting principally of stock on hand.

On or about the first day of June, 1885, verbal negotiations commenced between the parties looking towards a purchase by one copartner of the interest of the other. These negotiations were carried on with the understanding that a valuation should be fixed upon the partnership property, over and above its debts and liabilities, which, as a basis, each, in making his offer to the other, would, at his election, either buy or sell. In such negotiations the Fay notes were not treated as partnership liabilities.

In the progress of this negotiation, Gates sent Nelles the following communication :

"BAY CITY, MICH., June 22, 1885.

"*Mr. Nelson Nelles, City:* I hereby agree to buy the interest of Nelson Nelles in the firm of S. G. M. Gates & Co., at Toledo, Ohio, or to sell to him my interest in said yard, on the basis of sixteen thousand five hundred dollars ($16,500), the party purchasing to assume all company liabilities; and that all assets, of whatever nature, belonging to said firm shall be turned over to the purchaser, together with all interest in any insurance that may now, or at time of transfer, be paid in said firm name; the party purchasing to give sufficient security for the payment of the company indebtedness, and for purchase price.                    S. G. M. GATES."

And on the next day he received the following answer, in writing:

"BAY CITY, MICH., June 23, 1885.

" *Mr. S. G. M. Gates, City:* I accept your proposition of June 22d. I hereby sell to you my interest in the partnership of S. G. M. Gates & Co. on the terms mentioned in your offer.                    NELSON NELLES."

In pursuance of these notes or letters, Gates verbally arranged for a meeting with Nelles, and did meet him, for the purpose of arriving at and making an agreement, which said communications indicated the parties would make. At the meeting defendant had his counsel with him, who notified Gates that no further agreement or writings were necessary; that the communications, within themselves, constituted a complete and perfect sale of the interest of Nelles to Gates; and that, by the terms of such sale, Gates was obligated to pay the whole of the Fay indebtedness. Gates denied such a construction of the communications, or that an agreement had been made between them.

Gates on that day, and since that day, has repeatedly notified Nelles in writing, and also verbally, that the letters of the twenty-second and twenty-third of June did not constitute a sale of his interest to Gates, but were only part of negotiations which might result in a sale; and that Gates still considered and held him (Nelles) as a partner in said firm, and requested him to perform his duties as such partner; and that, unless he did so, Gates would, as a partner in

said firm, proceed with all due dispatch, and to the best advantage, to collect the debts owing to the firm, and pay those due from it.

Nelles paid no attention to these notices or requests, except to notify Gates in writing that the sale was completed by said communications in June, which he considered a bill of sale from him to Gates of his interest. He also caused a notice to be published in a Bay City newspaper to the effect that he had sold his interest in the firm to Gates.

Nelles abandoned the business, and paid no part of the Fay notes, and neglects and refuses to pay any of the same, or to make any provision for them. He repudiates and denies any obligation on his part to make any such provision.

The foregoing is substantially the statement of facts set out in a bill filed by complainant against the defendant in the circuit court for the county of Bay, in chancery, for a dissolution of the copartnership and an accounting between the parties.

The defendant demurred to the bill generally, for want of equity.

The court below sustained the demurrer and dismissed the bill.

We do not think the letters or notes passed between the parties constituted a completed sale. The offer of Gates was only one of the steps leading to a sale, and contemplated that the parties should meet, if the offer was accepted, and complete the transaction.

The offer looked towards further agreements as to the taking of sufficient security for the purchase price, and as indemnity for the payment of the company debts.

They did meet for such purpose, when it was ascertained at once that the minds of the parties did not meet, and never had met, upon the terms or conditions of the sale. Gates did not understand that he was obligating himself, in his offer, to pay the whole of the Fay notes, while Nelles pretended that he did so understand it. As soon as this radical difference appeared, the negotiations ended. The claim of Nelles was not one that the law, applied to the offer and acceptance,

would sanction. If these communications formed a contract, the disposition of the Fay indebtedness, as claimed by Nelles was not included in it. Most clearly, the purchaser, under the two letters, would not be obliged to pay any more than his half of the Fay notes. The contract was therefore evidently incomplete, for the reason that under the articles of copartnership, which both must be presumed to have known and understood, the Fay indebtedness had to be taken care of or provided for before the copartnership could be dissolved, even by the sale by one of his interest to the other.

The defendant must answer. The decree of the court below is reversed, with costs.

The other Justices concurred.