ABBOTT VOTING MACHINE CO. *v.* CITY OF EATON
RAPIDS.

CONTRACTS—MUNICIPAL CORPORATIONS—MEETING OF MINDS.

Where a city, in passing a resolution to buy voting machines of
plaintiff, inserted a proviso that the contract should be void
if any taxpayer objected in writing before a specified date,
but the seller, not knowing of the proviso, sent a written
acceptance which it subsequently retracted on learning of
the condition, the minds of the parties never met and plain-
tiff could not recover the price of the machines.

Error to Eaton; Smith, J. Submitted April 7, 1911.
(Docket No. 46.) Decided May 8, 1911.

Assumpsit by the Abbott Voting Machine Company
against the city of Eaton Rapids for the price of certain
voting machines. A judgment for defendant on a verdict
directed by the court, is reviewed by plaintiff on writ of
error. Affirmed.

*Fellows & Chandler,* for appellant.

*G. Elmer McArthur (Elmer N. Peters,* of counsel),
for appellee.

MOORE, J. The plaintiff wrote defendant as follows:

"To the Honorable Mayor and Common Council of the
City of Eaton Rapids:

" We hereby submit to you the following proposition
for the purchase of voting machines for use in your city.
We agree to furnish and sell your city three improved
Abbott Voting Machines exactly like the one you have
examined, in time for use at your election in April, 1906,
for the sum of $350 each.

"We also furnish with each voting machine one in-
struction machine. We also at the first election provide,
without expense to your city, a sufficient number of com-
petent men to assist in instructing the inspectors of elec-

165 MICH.—40.

tion and the voters in the use of the machine. Payment to be made for said machines either in cash or certificates to suit your convenience. If paid by certificates of indebtedness, 4 per cent. per annum shall be paid on all sums remaining unpaid; interest to commence May 1, 1906. Certificates to be paid any time within 10 years, and any sum may be paid in each or any year that you desire. Payment for said machines to be made upon the following conditions and not otherwise: That the Abbott Voting Machine Company guarantee each machine to be of perfect material and workmanship; that each machine will at elections keep an absolutely correct record of the vote of each voter voting at the elections, and that the number of votes as to each office being voted for shall exactly equal the number of voters as shown by the total register on the machine to have voted. That said company will keep said machines in repair and repair or replace any part or parts that may require repairing or replacing, and to place on said machines any improvements that may be made by the Abbott Voting Machine Company on its machines for a period of three years from date when said machines are first used, without charge to your city. If the machines comply with the above-mentioned conditions * * * then that you will provide for the payment of said machines as above mentioned at the first meeting of the council after such election. If the machines fail to comply with these conditions, we agree to ship them back to the factory and release your said city from any claim by their use or for damages.

"Dated March 20, 1906.

"ABBOTT VOTING MACHINE COMPANY,
"By B. D. Chandler,
"Secretary."

The city declined to accept the proposition in the form submitted by the company, and, on March 20, 1906, passed the following resolution:

"Resolved, that the city purchase three voting machines of the Abbott Voting Machine Company at $350 each. Said machines to be paid for by the city March 10, 1908, without interest. This contract to be null and void, providing any taxpayer submits objections in writing to the common council before March 10, 1908. The terms of this resolution to be subject to the approval of the company. Yea and nay vote resulted: Yeas, Aldermen Mix, Web-

ster, Hurd, Annis, Sheets. Nays, Alderman Blake. Resolution adopted."

Mr. Blake undertook to advise the plaintiff of what was done, and the plaintiff wrote defendant as follows:

"HUDSON, MICH., March 21, 1906.
" CITY CLERK,
" Eaton Rapids, Mich.
" *Dear Sir:*
"Our representative, Mr. George W. Blake, advises us of the resolution passed by your city council last evening (March 20th).
" We hereby advise your council that we will accept the conditions in this resolution and will ship three machines to your city next week. Am unable to advise you just what date they will arrive but probably not later than Tuesday.
" Do not make any arrangements about printing ballots until our representative gets there who will give you the necessary instructions.
" Respectfully yours,
"ABBOTT VOTING MACHINE COMPANY,
" By B. D. Chandler,
" Secretary."

Before the spring election of 1906, the plaintiff shipped to defendant three machines and an instruction machine for each ward, and the week before election sent to Eaton Rapids three men to hold schools of instructions and to assist on election day. The machines were used at this election and after the election was over the machines were packed up for the city by the instructors, and plaintiff paid their bills

Later the following letter was sent:

"HUDSON, MICH., April 9th, 1906.
" H. S. BENTLEY,
" Eaton Rapids, Mich.
" *Dear Sir:*
" I was very much surprised this morning to receive copy of resolution sent me by you April 6th.
" We cannot accept these words in the contract 'the purchase to be null and void providing any taxpayer sub-

mits objections in writing to the common council before March 10th, 1908.'

" I can very readily see how some one who favored a different kind of voting machine and who objected to a little additional tax might file written objections, at this time, or any time within two years, and thus, according to the resolution, defeat the sale. My understanding of the resolution was that you purchased the machines, but were to have until March 10th, 1908, to pay for them without interest; that was entirely satisfactory to us and we of course expect and want to enter into an agreement and guarantee that we will keep the machine in repair and put any improvements on for a period of three years without expense to your city.

" From what I have heard and from one or two letters I have received, I believe that your officials and citizens are very much pleased with the machines. Now, I am inclosing you herewith the guarantee which we are willing to make in consideration of your issuing to us certificates of indebtedness in payment for the machines according to the terms of our proposition and your resolution.

" We are required to have money or collateral in order to build machines and with the kind of a contract that you seem to want us to enter into we would have neither. I trust that you and your council will see the fairness and justness of this proposition and be willing to comply with our terms.

" I am inclosing you blank certificates of indebtedness which I hope that the council will authorize issued in payment for the machines. I am also inclosing our agreement and guarantee regarding repairs, etc.

" Kindly advise me as to whether the council are inclined to accept this.

" Very truly yours,
"ABBOTT VOTING MACHINE COMPANY,
" By B. D. Chandler,
" Secretary."

No reply was sent to this letter. A further attempt in June to get the city to settle with the company resulted in no quorum being present. In September a resolution was passed as follows:

" The question being on the purchase of the Abbott Voting Machines, Alderman Webster moved: That the city attorney draw up a certificate of indebtedness in conform-

ity with the resolution passed by the common council, March 21, 1906, and the contract with the Abbott Voting Machine Company now on file in the clerk's office, and the clerk and mayor be and are hereby authorized to sign same and present to the company for their acceptance. Carried."

Before the spring election of 1907, the city, through its mayor, requested that certain small changes be made in their machines, but the election was so near at hand that the secretary of the company suggested that the machines be sent over after election to have the change made. The city used the machines at this election. After the election, the machines were returned to plaintiff.

In September the following letter was sent:

"HUDSON, MICH., Sept. 19, 1906.
"COMMON COUNCIL,
        "Eaton Rapids, Mich.
"Gentlemen:
    "We make you the following proposition for the sale of the three voting machines and instruction machines now in your city:
    "We will sell the same and accept in payment therefor your certificate of indebtedness for the sum of $1,050 due April 1st, 1908, without interest.
    "If this is satisfactory to you kindly authorize the issue of certificate at once as we are being compelled to use large sums of money now and are in need of the collateral.
                    "Very truly yours,
            "THE ABBOTT VOTING MACHINE CO.,
                        "By B. D. Chandler,
                                "Secretary."

Nothing was done under this proposition. Later the following letter was sent:

"EATON RAPIDS, MICH., May 20, 1907.
"THE ABBOTT VOTING MACHINE CO.,
                    "Hudson, Mich.
"Gentlemen:
    "I write you in regard to the three Abbott Voting Machines that were shipped to Eaton Rapids, some time early in the spring of 1906, and which were recently returned to your factory. I was not mayor of the city at

the time these machines were sent here, but am advised that a question was at that time raised about the right of the common council of this city to purchase these machines. You will understand that Eaton Rapids is incorporated as a city of the fourth class under the provisions of Act No. 215 of the Public Acts of Michigan for the year 1895, as amended. At the time these machines were sent in here, the city was without funds with which to make the purchase and no provision has since been made by the council to pay for them. I question the right of the council to attempt a purchase of these machines under the circumstances existing at the time, for the reasons before assigned and cannot now see my way clear, as chief executive of the city, of signing any certificates of indebtedness for these machines whereby the city will be called upon in the future to pay for them. I understand the machines are at the Lake Shore freight house; we do not intend to take them away from there, and you are at liberty to do with them as you see fit.

"Very truly yours,

[Signed]        "C. S. HORNER, Mayor."

Nothing further was done about the contract, and this suit was brought after March 10, 1908. It is conceded on the record no protest was filed by any taxpayer prior to the 10th day of March, 1908. It was conceded that if plaintiff was to recover at all it was entitled to recover the sum of $1,133.45.

The secretary of the plaintiff company was sworn as a witness. He testified on the cross-examination in part as follows:

"I carried on the correspondence for the company during the year 1906 and down to the present time; I knew of a proposition being submitted by our representative, Mr. Blake, to the city of Eaton Rapids; it was prepared by me. We sent Blake there to represent us in an effort to sell the city of Eaton Rapids three voting machines. He telephoned me what the council done that night—March 20th. I certainly am inclined to think I received a wrong impression from his telephone message as to what they actually had done. When I wrote this letter of March 21st, I did not know there was a provision that the resolution of the council should be void in case any

taxpayer filed objections in two years. When I learned there was such a provision, I wrote them Exhibit 1."

Exhibit 1 was the letter of April 9th.

A motion was made that the judge direct a verdict in favor of defendant (1) because no contract was made, as the minds of the parties never met; (2) because the council was not authorized to make the alleged contract. The judge declined to pass upon the second point, but held the first proposition was well taken and directed a verdict for defendant. The case is brought here by writ of error.

In Tiffany on Sales, page 28, it is said:

"From the principle that contracts can be effected only by mutual assent, it follows that where, through some mistake of fact, each was assenting to a different contract, there is no valid agreement, notwithstanding the apparent mutual assent."

In Mechem on Sales, § 265, it is said:

"Mistakes of parties in making the contract.—In order that there may be a contract between the parties, it is evident that the parties must agree—they must, as it is so often said, assent to the same thing in the same sense. In a particular case, however, it may be found that, owing to the mistake, misapprehension or ignorance of one or both of the parties, they have not agreed, although, perhaps, they thought they had."

At section 278, same author, it is said:

"Mistake as to terms of contract—Price.—There may also be mistake as to the terms of the contract. The mistake most commonly made, perhaps, is in reference to the price. If the parties are mutually mistaken, as where an offer of a certain price for shingles was understood by the seller to be so much per bunch and by the buyer to be so much per thousand—a material difference—it was held that there was no contract."

In *Fire Insurance Association* v. *Wickham*, 141 U. S. 564 (12 Sup. Ct. 84), in disposing of the case, the following language was used:

"Thus in *Philpot* v. *Gruninger*, 14 Wall. (U. S.) 570, 577, it is stated that 'nothing is consideration that is not

regarded as such by both parties.' To constitute a valid agreement, there must be a meeting of minds upon every feature and element of such agreement, of which the consideration is one. The mere presence of some incident to a contract, which might under certain circumstances be upheld as a consideration for a promise, does not necessarily make it the consideration for the promise in that contract. To give it that effect, it must have been offered by one party, and accepted by the other as one element of the contract. In *Kirkpatrick* v. *Muirhead*, 16 Pa. 117, 126, it was said that ' consideration, like every other part of a contract, must be the result of agreement. The parties must understand and be influenced to the particular action by something of value, or convenience and inconvenience, recognized by all of them as the moving cause. That which is a mere fortuitous result flowing accidentally from an arrangement, but in no degree prompting the actors to it, is not to be esteemed a legal consideration.'

"See, also, 1 Addison on Contracts, p. 15; *Ellis* v. *Clark*, 110 Mass. 389 (14 Am. Rep. 609)."

See, also, *National Bank* v. *Hall*, 101 U. S. 43; *Gates* v. *Nelles*, 62 Mich. 444 (29 N. W. 73); *Sherwood* v. *Walker*, 66 Mich. 568 (33 N. W. 919, 11 Am. St. Rep. 531); *Wilkin Manfg. Co.* v. *Lumber Co.*, 94 Mich. 158 (53 N. W. 1045).

Let us apply these principles of law to the case in hand. The resolution of March 20, 1906, authorizing the purchase of these machines, had these words:

"This contract to be null and void providing any taxpayer submits objections in writing to this common council before March 10, 1908. The terms of this resolution to be subject to the approval of the company."

As has already appeared, Mr. Blake undertook to notify the company by telephone of the contents of this resolution. It has also appeared that when Mr. Chandler, the secretary, wrote the letter of March 21, 1906, he did not know of the above important provision. Unless this letter is to be regarded as the approval of defendant company, it never did approve of the terms of the resolution. It is difficult to see how either the secretary or the company

could approve of the resolution, when he and it had no knowledge of its terms. When knowledge of the terms of the resolution came to Mr. Chandler, he wrote the letter of April 9, 1906, in which he says:

"We cannot accept these words in the contract, 'the purchase to be null and void providing any taxpayer submits objections in writing,' etc."

We think the judge was right in holding the minds of the parties never met. This makes it unnecessary to discuss the other questions.

Judgment is affirmed.

OSTRANDER, C. J., and BIRD, HOOKER, and MCALVAY, JJ., concurred.