CITY OF MILWAUKEE, Plaintiff-Appellant,

v.

Eloise WROTEN, Defendant-Respondent.

Supreme Court

*No. 89-1628. Argued October 30, 1990.—Decided March 6, 1991.*

(Also reported in 466 N.W.2d 861.)

208

209

For the plaintiff-appellant the cause was argued by *Scott G. Thomas,* Milwaukee assistant city attorney with whom on the briefs (in the court of appeals) was *Grant F. Langley,* city attorney.

For the defendant-respondent there was a brief by *Kathleen Walsh* and *Legal Aid Society of Milwaukee, Inc.,* Milwaukee and oral argument by *Ms. Walsh.*

HEFFERNAN, CHIEF JUSTICE. This is an appeal on bypass pursuant to sec. 808.05, Stats., from an

order of the circuit court for Milwaukee county, Leah M. Lampone, judge, which affirmed the order of the municipal court of the City of Milwaukee dismissing the complaint of the city charging the defendant, Eloise Wroten, with "resisting" a police officer, contrary to the provisions of Ordinance 2–138. We affirm.

The municipal court, James A. Gramling, Jr., municipal judge, dismissed because he found the ordinance to be overbroad and, hence, unconstitutional.

On appeal to the circuit court and to this court, the city contends that the municipal court, as a statutory court, has no authority to declare an ordinance unconstitutional and, in addition, contends that the ordinance is not overbroad and is constitutional.

We conclude that a municipal court created by the legislature pursuant to article VII, sec. 2, of the Wisconsin Constitution has the authority to determine the constitutionality of a municipal ordinance upon which an action for a civil forfeiture is based. We also conclude that Ordinance 2–138 of the City of Milwaukee is unconstitutionally overbroad.

The facts of this case are basically undisputed. On September 21, 1987, at approximately 7:15 p.m., City of Milwaukee police officers were conducting an investigation into a juvenile disturbance in an apartment building. During the course of the investigation, Wroten, a resident of the apartment building, entered the building and began to question the police officers about their presence. The police officers told Wroten what they were doing and then asked her to leave the hallway where they were conducting their investigation. At this point, it is alleged Wroten became "verbally abusive" and refused to leave the area.

After three to five minutes, Wroten again refused to leave the area after being directed to do so. Wroten was

then "arrested" for violating the City of Milwaukee's resisting ordinance. The police officers described the violation on the front of the citation as follows: "[A]fter numerous warnings to the contrary [Wroten] verbally interfered in ongoing investigation." The back of the citation contained a longer explanation of the incident:

> . . . Subj entered building and immediately began to question officers as to presence in the Building. When informed of presence and told to leave the area (Hallway) Subj continued to verbally badger officers and interfere with investigation.
>
> After tolerating subject's behavior for 3-5 minutes, Subj was again told to leave the area, Subj refused, taken into custody.

On September 27, 1987, Wroten was formally charged with violating sec. 2-138 of the Milwaukee Code of Ordinances, which reads:

> **2–138. Resisting Officer.** Whoever in this city shall resist, or any way interfere with any police officer or member of the police department in the discharge of his duty, or shall hinder or prevent him from discharging his duty as such officer or member, or shall offer or endeavor so to do, and whoever shall in any manner assist any person in custody of any officer or member of the police department to escape or attempt to escape from such custody, or shall rescue or attempt to rescue any person in custody, shall forfeit a penalty of not less than ten dollars ($10) nor more than two hundred and fifty dollars ($250), or be imprisoned in the house of correction for not less than thirty (30) days nor more than six (6) months, or by both such fine and imprisonment.[1]

[1] In respect to the penalty portion of this ancient ordinance, we invite attention to *State ex rel. Keefe v. Schmiege,* 251 Wis. 79, 85 ff, 28 N.W.2d 345 (1947), which holds that a sanction of

## Authority of a Municipal Court to Determine
### the Constitutionality of an Ordinance

The city has argued at each stage of this litigation that the municipal court was without such authority. The city contends that a municipal court is a court of limited jurisdiction and, without an express grant of authority, it lacks the capacity to decide constitutional questions. The city points out that municipal courts are special courts with specifically enumerated authority.

The city, while recognizing that municipal courts are referred to in the Wisconsin Constitution, article VII, sec. 2,[2] contends their powers, even if created by legislative action, are limited in their jurisdiction to that specified by article VII, sec. 14.[3]

Further, the statutes, sec. 755.045, Stats.,[4] distinguishes municipal courts from all other courts, because

---

imprisonment can only be imposed for violation of the criminal law and that such power can not be delegated to, or exercised by, a municipality.

[2] **Court system.** Section 2. [*As amended April 1966 and April 1977*] The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature under section 14.

[3] **Municipal court.** Section 14. [*As amended April 1977*] The legislature by law may authorize each city, village and town to establish a municipal court. All municipal courts shall have uniform jurisdiction limited to actions and proceedings arising under ordinances of the municipality in which established. Judges of municipal courts may receive such compensation as provided by the municipality in which established, but may not receive fees of office.

[4] **755.045 Jurisdiction. (1)** A municipal court has exclusive

municipal courts, with exceptions for transfer to circuit court, have exclusive jurisdiction over actions to impose forfeitures for ordinance violations.

The city convincingly establishes that a municipal court is not a court of record, but acknowledges that its exclusive jurisdiction in respect to ordinance enforcement exceeds that of all other courts.

The city also asserts that a municipal court is different from other courts referred to in the Wisconsin Constitution because there are specific limitations on the exercise of equitable jurisdiction. The city, pointing out that a judge of municipal court need not be a lawyer,[5]

jurisdiction over an action in which a municipality seeks to impose forfeitures for violations of municipal ordinances of the municipality which operates the court, unless the action is transferred under s. 800.04(1) or 800.05(3) to a court of record. If equitable relief is demanded the municipal court does not have jurisdiction and the action must be brought in a court of record.

(2)  A municipal judge may issue civil warrants to enforce matters which are under the jurisdiction of the municipal court. Municipal judges are also authorized to issue inspection warrants under ss. 66.122 and 66.123.

(3)  A municipal judge may order the payment of restitution for violations of ordinances in conformity with s. 943.24 or 943.50. The judge shall use the restitution procedure under s. 943.24(5) or 943.50(5), as applicable.

**Judicial Council Committee's Note, 1977:**  This section makes clear that, unless transferred to a court of record, a municipal court is a court of exclusive jurisdiction for an action brought by a municipality wishing to impose a forfeiture for violation of one of its municipal ordinances. [Bill 1240-A]

See note to 343.305, citing 67 Atty. Gen. 185.

[5]The Wisconsin Constitution, article VII, sec. 24(1), requires that:

(1)  To be eligible for the office of supreme court justice or judge of any court of record a person must be an attorney licensed to practice law in this state and have been so licensed for 5 years immediately prior to election or appointment.

215

argues that it is unreasonable to expect complicated constitutional questions to be decided by nonlawyer judges.

The city most convincingly establishes that the authority of a municipal court is not identical with that of a circuit court and, therefore, reaches the conclusion that, because the circuit court has plenary jurisdiction, including the power to declare an ordinance unconstitutional, the municipal court, being different in many respects, cannot have that same power or authority. We do not believe that conclusion logically follows from the premises established by the city.

The city does, however, demonstrate that the constitution, by article VII, sec. 2, divides the judicial power into segments:

One supreme court

A court of appeals

A circuit court

Such trial courts of general uniform statewide jurisdiction as the legislature may create by law

A municipal court if authorized by the legislature

This segmentation becomes an important component of the city's argument when it cites the holding in *Just v. Marinette County,* 56 Wis. 2d 7, 201 N.W.2d 761 (1972), that, in addition to the supreme court having the authority to declare legislation unconstitutional, "trial courts" also have that power; but the city argues that, under the classification of article VII, sec. 2, the municipal court provision is stated separately and, therefore, *Just* did not include municipal courts within the ambit of "trial courts," whose power to determine constitutionality was ratified in that case.

The city asserts that *Just* is authority that municipal courts, because they are not trial courts, cannot make determinations of constitutionality.

We believe that the City of Milwaukee relies on trivial verbal differences in *Just* where no significant distinction was intended. *Just* uses interchangeably the terms, "lower court[s]," 56 Wis. 2d at 24, "inferior courts," id. at 24, and "trial courts," id. at 25. It is apparent that there was no intention to limit the holding of *Just*—that courts other than the supreme court could adjudicate constitutionality—to "trial courts," as referred to in the constitution. Rather, the teaching of *Just* is that all courts in which constitutional questions are raised should decide them. The only meaningful distinction between court levels is the distinction between "appellate courts,"[6] id. at 25–26, and all other courts. The holding of *Just* is simply that determination of constitutionality reasonably cannot abide initial adjudication by the appellate court at a time long subsequent to the onerous imposition of the strictures of an unconstitutional legislative act. The teaching of *Just* is that, whenever a constitutional question is raised, it should be decided. Of course, questions of constitutionality, like other questions of law, cannot finally be laid to rest until decided by final appellate adjudication—since 1978, either by the court of appeals by published opinion or by determination by the Wisconsin Supreme Court.[7]

---

[6]*Just* predated the court reorganization effective in 1978 which created the court of appeals.

[7]The city makes much of pre-*Just* law that "[U]nless it appears clearly beyond a reasonable doubt that the statute is unconstitutional, it is considered better practice for the court to assume the statute is constitutional, until the contrary is decided by a court of appellate jurisdiction." *State v. Stehlek*, 262 Wis

*Just* supports not the city's position, but Wroten's that optimum utilization of our court facilities requires that all courts have the authority to decide constitutionality.

The city has yet another argument that must be addressed—that a municipal court is not a court at all but is a mere administrative agency, which this court has held does not have the authority to decide constitutionality because administrative agencies are a part of the legislative branch of government that created them and, by implication, are not clothed with the power to declare unconstitutional the laws of their creator. *See Kmiec v. Town of Spider Lake,* 60 Wis. 2d 640, 646, 211 N.W.2d 471 (1973).

The city asserts that the same reasoning and conclusion is applicable to a municipal court, for under the constitution municipal courts can only exist if "authorized" by the legislature. Moreover, the legislature has limited their jurisdiction to "proceedings arising under ordinances of the municipality." Does it not then follow that such a tribunal, by reason of its legislative genesis, cannot question the constitutionality of its progenitor—the state and, indeed, the city which established the municipal court by appropriate municipal legislative action.

---

642, 645, 56 N.W.2d 514 (1953), quoted in *Just,* 56 Wis. 2d at 24. This, however, is the mandatory test to determine constitutionality that is to be applied by all courts, whether final appellate or not. To the extent that *Stehlek* or *Just* leads to the implication—and we believe neither reasonably does so—that the final appellate court has more latitude in declaring a legislative enactment unconstitutional, we expressly repudiate that implied conclusion. The test is the same. The nonfinal courts are, however, bound by constitutional determinations of final appellate courts once such determinations are made.

We conclude that the constitutional structure provides the answer, "No."

Article VII of the constitution is captioned as the Judiciary Article. Section 2 of that article provides that the judicial power of this state shall be vested in a unified court system consisting of the supreme court, the court of appeals, the circuit court, trial courts that may be created by the legislature, and a municipal court if authorized by the legislature.

Thus, under our organic law, once a municipal court is created, its power is not that of the legislature that has authorized it, but its power is judicial as a part of the unified court system. A municipal court under the constitution is a repository of judicial power even as are the supreme court, the court of appeals, and the circuit court. It is not inhibited as is an administrative agency, which can only be the repository of some of the attributes of its legislative creator.[8] Rather, by legislative action, specifically contemplated and authorized by the constitution, a municipal court is endowed by its creation with judicial powers. It is the constitution, the organic document of our sovereignty, that gives the legislature the power to create courts, which by enabling legislation are then endowed with the constitutionally bestowed attributes of judicial powers. The legislature is but a catalyst in this process of court creation. The municipal court is a court that is constitutionally a part of the court system.[9]

---

[8]The legislative origin of the powers of administrative tribunals or administrative decisionmakers, as contrasted with the constitutional origin of the powers of courts, clearly demonstrates that judicial power is vested only in courts and only those who preside over courts are properly denominated judges.

[9]We note that the Blue Ribbon Study Committee which

Thus, the question is what powers inhere in any court in respect to determination of constitutionality. The answer is found in venerable constitutional law aptly and irrevocably stated by Chief Justice John Marshall in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177–78 (1803):

> It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each.
>
> So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.

*See also Lent v. Tillson,* 140 U.S. 316, 330 (1891), which stated, "[T]he power to [rule on a statute's constitutionality] is necessarily involved in the power of the court to act at all."

Thus, in conformity to the "separation of powers" doctrine, a municipal court, as a part of the judicial branch, must have the inherent authority to rule on con-

---

proposed the court reorganization that became effective in 1978 contemplated a municipal forum or adjudicatory body that was not to be a part of the state's judicial system. *See* Citizens Study Committee on Judicial Organization, page 69 (1973). These proposals were not adopted. Instead, the revised constitution specifically made municipal courts a part of the unified court system.

stitutional issues affecting the municipal ordinance which is involved in the case before it.

*Marbury v. Madison* is also the seminal rationale for making the judge's oath an important criterion or guideline for judicial conduct when a judge is faced with the prospect of proceeding with an action based upon an unconstitutional legislative act. The judicial oath, an oath taken by all Wisconsin judges, provides in part, "I do solemnly swear that I will support the constitution of the United States and the constitution of the state of Wisconsin."

It is argued by the defendant, and it was asserted by the municipal judge, that this oath by its words obligated him to hold unconstitutional the ordinance that came before him.

[7]

While we agree with the conclusion of the municipal judge and the assertion of the defendant, we do not view the oath, per se, as conferring the power to declare an ordinance unconstitutional. As the city has pointed out, legislative, executive, and administrative officers take the same oath, but it cannot be argued that those officers thereby acquire the power to declare legislation unconstitutional. As we view the oath, it obligates the officer to adhere to constitutional principles in administering the public trust of the particular office. For an executive officer or for a legislative officer, this means he or she swears to perform those executive, legislative, or administrative duties in a constitutional manner. The oath taken by a judge has the same significance, and it includes the obligation to perform judicial duties in the manner prescribed by our constitution, including the exercise of the inherent authority and obligation so well stated in *Marbury v. Madison.* Thus, when judicial officers subscribe to the oath, they obligate themselves

to determine the constitutionality of legislation when the legislation is challenged on that basis. Their power comes not from the oath, but from the constitution, as is explained in *Marbury v. Madison.*

Nowhere in the constitution is the power to declare a law unconstitutional expressly given to any court, whether it be the supreme court, the court of appeals, or the circuit court; but all of those courts have that power because they are courts, even as the municipal court has that power and for the same reason. No express constitutional delegation is appropriate or necessary. It is an inherent power that derives from the doctrine of separation of powers and the fact that the constitution is the supreme law of the land and of the state and only the courts can finally adjudicate that supremacy.

Nevertheless, the city, quoting article VII, sec. 14, of the constitution, states that the municipal court has jurisdiction "limited to actions and proceedings arising under ordinances of the municipality in which established." How then can it have the awesome power to declare a matter unconstitutional? We conclude that, once a court, including a municipal court, appropriately invokes its jurisdiction, it has the power to exercise all of its constitutional powers within the framework of that conferred jurisdiction. Thus, in the exercise of its jurisdiction in the instant case in respect to the municipal ordinance, which is unquestioned, it could, in fulfillment of its jurisdictional mission,[10] invoke all judicial powers

---

[10]It was conceded at oral argument that municipal courts, without a specific grant of authority, had the general judicial power to determine whether arrests were constitutionally appropriate and whether evidence was suppressible under the strictures of the fourth amendment. These powers, which are concededly

that are not specifically denied.

Therefore, municipal courts, once created by the legislature and by appropriate municipal action, are courts endowed with all judicial powers not expressly denied them, which powers may be exercised in all cases that fall within their jurisdiction. We hold that the municipal court has the authority to determine the constitutionality of an ordinance that is the basis of an action brought before it.[11]

exercised by the municipal courts, are not specifically conferred by legislation. They go with the judicial task. Also, it should be noted that fourth amendment issues are frequently at least as complex as the determination of the constitutionality of a piece of legislation. The fact municipal judges need not be lawyers is irrelevant to the municipal courts' power to declare legislation unconstitutional. Until 1955 (art. VII, sec. 24), no judge of any court of this state, including this one, was required to be a lawyer. Yet, in no instance brought to our attention was a finding of constitutionality or of unconstitutionality ever challenged on that ground. Also, it would be bizarre, indeed, if the power of identically created municipal courts would vary depending upon the licensure of the judge.

[11]It is apparent both from legislative action and from the rules promulgated by this court that municipal judges are considered an integral portion of our art. VII constitutional court system. The legislature treats municipal judges in the same way it treats justices of the supreme court and judges of the court of appeals and the circuit court for the following purposes: They are subject to the financial disclosure requirements under sec. 19.43, Stats., and the standards of conduct for public officials under sec. 19.45, Stats.; they are subject to the jurisdiction of the Wisconsin Judicial Commission in proceedings involving alleged judicial misconduct or disability under secs. 757.81 through 757.99, Stats. The supreme court treats municipal judges in a manner similar to the way it treats circuit judges: It imposes on them a mandatory continuing education requirement, SCR ch. 33; they are subject to

## II

*Constitutionality of Sec. 2-138 of*
*City of Milwaukee Ordinances*

The municipal court and the circuit court held the Milwaukee ordinance to be unconstitutionally over-

the Code of Judicial Ethics, in part, SCR ch. 60 and SCR 60.19(2); three municipal judges are included as representative members of the Judicial Conference, SCR 70.15, under the Conference's bylaws. Because administrative hearing officers are not judges, they are not subject to these rules. The report of the *Wisconsin Equal Justice Task Force,* January 1991, points out that administrative agency hearing examiners, unlike supreme court justices, court of appeals judges, circuit court judges, and municipal judges, are not subject to the Code of Judicial Ethics and, therefore, "[b]ecause complainants have no means of redress and because there is no code governing the conduct of hearing examiners, the administrative process cannot be responsive to complainants' claims of gender discrimination by hearing examiners." *Wisconsin Equal Justice Task Force,* at 32. Contrary to the contention of the City of Milwaukee that the position of a municipal judge is analogous to that of an administrative law examiner, the constitution, the statutes, and this court's rules give no support to that point of view.

Moreover, the chief justice, as the "administrative head" of the judicial system under article VII, and the supreme court exercise administrative authority over municipal courts. The chief justice, under sec. 751.03, Stats. (Rule), may exercise assignment authority over municipal judges and assignment of cases in municipal courts in the following instances:

> **751.03 Assignment of judges. (1)** The chief justice of the supreme court may assign any active supreme court justice, court of appeals judge or circuit judge to serve temporarily as a judge of the court of appeals or any circuit court to aid in the proper disposition of business in that court. The chief justice of the supreme court may designate and assign reserve judges under s. 753.075 to serve temporarily in the court of appeals or the circuit court for any county.

broad. We agree with the determination of both courts and accordingly affirm.

The overbreadth doctrine in principle is easy to state but sometimes difficult to apply. The principle is simply that an ordinance or statute which has the effect or the potential of chilling or inhibiting speech, which is protected by the first amendment, is unconstitutional. In application, it recognizes the right of a person whose own speech or conduct is not protected by the first amendment to challenge a statute or ordinance which on its face sweeps too broadly and substantially reaches protected first amendment expression. *See City of Milwaukee v. Nelson,* 149 Wis. 2d 434, 451–52, 439 N.W.2d 562 (1989).

While acting under a temporary assignment, an active or reserve justice or judge may exercise all the authority of the court to which he or she is assigned.

(2) The chief justice of the supreme court may exercise the authority under sub. (1) in regard to municipal courts for the purpose of:

(a) Assigning a case in which a change of judge is requested under s. 757.19(5) or is required under s. 800.05 to another municipal judge or, if none is available, transferring the case to circuit court.

(b) Assigning cases in municipal court in which a municipal judge is incompetent, unable or fails to act, to another municipal judge, former municipal judge or former circuit judge. A judge to whom cases are so assigned may serve until the chief justice determines that the incompetency, inability or failure ceases, or until the term of the municipal judge expires or the vacancy is permanently filled under s. 8.50(4)(fm), whichever occurs first. If no judge is available, the chief justice may transfer a case from municipal court to circuit court.

Municipal courts account for a huge number of case dispositions. For example, in 1989, with approximately two-thirds of the municipal courts in Wisconsin reporting, 358,350 cases were disposed of in municipal courts.

225

Thus, it is reasoned that an overbroad legislative enactment "threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution and undertake to have the law declared . . . invalid." *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503 (1985).

Accordingly, a court will strike an overbroad statute because it might apply to others not before the court who may engage in protected activity which the statute appears to outlaw. *See generally,* Nowack, Rotunda & Young, *Constitutional Law* (West Publishing Co., 1986). As was said in *N.A.A.C.P. v. Button,* 371 U.S. 415, 432 (1963):

> [T]he [statute] may be invalid if it prohibits privileged exercises of First Amendment rights whether or not the record discloses that the petitioner has engaged in privileged conduct. For in appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar.

While, as the excellent opinions of both the municipal judge and the circuit judge demonstrate, a party challenging the statute or ordinance, or a judge contemplating its constitutionality, can hypothesize situations where the language of the statute can reach and inhibit protected expression, there are limits that are to be placed upon the use of hypothetical situations. The overbreadth of the statute must be real and substantial. This court said in *Milwaukee v. K.F.,* 145 Wis. 2d 24, 40, 426 N.W.2d 329 (1988):

> [I]n asserting an overbreadth challenge an individual may hypothesize situations in which a statute or ordinance would unconstitutionally intrude upon the first amendment rights of third parties . . .. However . . . the court will not deem a statute or ordinance invalid because in some conceivable, but limited, circumstances the regulation might be improperly applied.

Also, the cases of the United States Supreme Court exclude from privileged speech "fighting words" which "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572 (1942).

Opinions of the United States Supreme Court have indicated that what may be "fighting words" under *Chaplinsky* may nevertheless be protected speech when directed against a police officer who as "a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.' " *Lewis v. City of New Orleans,* 415 U.S. 130, 135 (1974) (Powell, J., concurring); *Houston v. Hill,* 482 U.S. 451, 462 (1987) (*see also* Powell, J., concurrence at 479).

Additionally, there are cases where an ordinance may on its face appear to sweep too widely, but by a process of judicial construction, a state court might conclude that, on the basis of legislative history and examination of the verbiage, the enactment can be applied constitutionally to nonspeech-related conduct. The city urges us to so construe the ordinance if we otherwise were to find it overbroad.

With these general principles in mind, we examine the particular ordinance before us.

The ordinance was adopted by the common council of the City of Milwaukee in 1855, long before the enact-

ment of the Civil War amendments to the constitution that eventually led to the incorporation of the Bill of Rights by the use of the fourteenth amendment into the constitutional law that is applicable to every state. The Milwaukee ordinance's passage long antedated any specific statement of the overbreadth doctrine, although as early as 1875, the Supreme Court in *United States v. Reese et al.,* 92 U.S. 214, 221 (1875), stated:

> It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.

We know nothing of the legislative history, the particular facts, or societal problems that impelled the passage of the Milwaukee ordinance.[12] We must therefore appraise this ordinance[13] on the basis of its language alone:

> 2–138. **Resisting Officer.** Whoever in this city shall resist, or any way interfere with any police officer or member of the police department in the

---

[12]It is interesting to speculate about the great issue of the day—the enforcement of the fugitive slave law—and whether it had a part in the genesis of the ordinance. In *The Story of a Great Court* by J.B. Winslow (1912), at pp. 72 ff. he recounts the harassing of officials who were attempting to enforce the fugitive slave law on the free soil of Wisconsin. He graphically describes the rescue of the escaped slave Glover from the police on March 11, 1854, and the breaking into the Milwaukee jail to free the slave. One of the prohibitions of the ordinance is the "rescue . . . [of] any person in custody."

[13]Except for an increase in penalties for violation, the ordinance is unchanged after the passage of 135 years.

discharge of his duty, or shall hinder or prevent him from discharging his duty as such officer or member, or shall offer or endeavor so to do, and whoever shall in any manner assist any person in custody of any officer or member of the police department to escape or attempt to escape from such custody, or shall rescue or attempt to rescue any person in custody, shall forfeit a penalty of not less than ten dollars ($10) nor more than two hundred and fifty dollars ($250), or be imprisoned in the house of correction for not less than thirty (30) days nor more than six (6) months, or by both such fine and imprisonment.

The city argues that, in any event, the overbreadth doctrine which protects free speech is inapplicable here, because the violative element leading to Wroten being charged was conduct, not speech. The facts, sketchy as they are, do not determine this issue. A portion of the citation refers to "verbal abuse" directed to the police officers—clearly, a matter denominated as speech. Another portion of the citation refers to Wroten's refusal to leave the area. This is arguably conduct, although mere presence, or refusal to leave a place in some instances, such as peaceful picketing, may be protected as speech. However, what Wroten did at the time of her being charged is irrelevant. At issue is the facial invalidity of the ordinance and not whether the person charged has been improperly denied the right of free speech. Even if Wroten's action could properly be denominated conduct in a narrowly and carefully crafted ordinance, the question is whether the enforcement of the ordinance as enacted by the common council of Milwaukee could have the effect of chilling freedom of expression. We therefore address the ordinance itself.

In paraphrase, the ordinance prohibits a person from *resisting or in any way interfering* with any police

officer or *hindering* or *preventing* him from the discharge of his duty or from offering or endeavoring to do so.

If these words refer exclusively to conduct, they are constitutionally acceptable. If, however, they can also apply to verbal expressions which are not "fighting words," the ordinance is on its face, without resorting to the underlying facts which led to the charge against Wroten, overbroad and constitutes an infringement upon protected speech.

The following are partial definitions of the key words of the ordinance as stated in Webster's *Third New International Dictionary:*

Resist— "to exert oneself to counteract or defeat"

Interfere— "to enter into or take a part in the concerns of others"

Hinder— "to make slow or difficult the course or progress of; to keep from occurring, starting, or continuing"

Prevent— "to keep from happening"

Each of these, with the possible exception of "resist," could as reasonably refer to verbal expression as to conduct.

In *Houston v. Hill,* 482 U.S. 451 (1987), the Supreme Court found the ordinance overbroad when it prohibited anyone from "interrupting" a police officer in the execution of his duty. The use of the word, "interrupts," was found to be excessively sweeping and, therefore, constituted an unconstitutionally overbroad restriction on speech. The Court, at 462, said, "It is not limited to fighting words nor even to obscene or opprobrious language, but prohibits speech that 'in any manner . . . interrupt[s]' an officer."

It is significant to note that "interrupts," the word that was found to sweep too broadly in *Houston v. Hill,*

230

is synonymous with three of the words used in the Milwaukee ordinance. Webster's *Third New International Dictionary* defines "interrupt" as to "halt, *hinder,* or *interfere* with the continuation of . . .," or to "*prevent* (one) from proceeding." (Emphasis supplied.)

Thus, the critically unconstitutional term used in the *Hill* ordinance is defined to encompass three of the activities prohibited by the Milwaukee ordinance.

The *Hill* ordinance was prefaced with the words prohibiting a person "in *any manner* [to] . . . interrupt any policeman in the execution of his duty." At 455 (emphasis supplied). In the ordinance before us, the analogous language is "resist, or *any way* interfere . . .." (Emphasis supplied.)

Thus, if it were not apparent from the words themselves, the "any way" language, as does the "any manner" language of *Hill,* leads inexorably to the conclusion that the prohibited activity includes speech that "interferes," "prevents," or "hinders," as well as physical conduct that has the same effect. A broad and expansive interpretation is dictated by the language.

The explication of the language of the ordinance makes it unnecessary to hypothesize situations in which freedom of speech will be abridged at the untrammelled option of a police officer, but both Judge Gramling, the municipal judge, and Judge Lampone, the circuit judge, well stated examples of the potential sweep of the ordinance. Judge Gramling stated:

> Analysis of the Milwaukee ordinance reveals that it has the same constitutional infirmities as those described above. It applies to verbal conduct and has no measurable limitations. Any spoken words which a police officer believes have in any way interfered with the officer subject the person to pros-

ecution. A Milwaukee citizen who wishes to question or challenge police conduct at an arrest scene may be deterred by this ordinance from doing so. The speaker's comments or questions may reflect reasoned judgment or short-tempered frustration. Their unpleasant content, standing alone, cannot make them punishable, however, if the First Amendment is to retain its treasured status in our society.

Judge Lampone in her opinion stated:

. . . the Milwaukee ordinance does not require that an obstruction actually take place; all one need do is "offer or endeavor" to hinder the officer. This is less than would be required under an "attempt" statute, which requires an intent to commit the offense and an act toward commission of the offense which demonstrates "unequivocally" that he formed the intent and would commit the offense but for the intervention of an extraneous factor. Sec. 939.32(3), Stats. Under the American Law Institute version, equivocal or preparatory conduct is excluded; under the Milwaukee ordinance, it could be the basis for an arrest. This far-reaching prohibition against an "offer" or "endeavor" increases dramatically the already extremely broad discretion vested in the officer.

She also stated:

The Milwaukee ordinance could apply to a substantial amount of constitutionally protected conduct. One who complained of the amount of force used by an officer in effecting the arrest of a third party could be deemed to be interfering with that officer's arrest. A witness who, loudly professing dislike of authority, refused to identify the perpetrator of a crime could be deemed to have "prevented" the officer from arresting the culpable party. A bystander who advised a suspect to refrain from making any

232

statement to investigating officers until his attorney arrived could be "endeavoring" to prevent the police from obtaining a statement. A mother who verbally challenged an officer's right to take her minor child into custody would be "interfering" with the officer's duty to detain the child.

We also note that the Milwaukee ordinance could apply irrespective of any purpose or "intent" to eventually interfere, hinder, or prevent police from carrying out their duties. We do not belabor that lacuna of the ordinance, for it is unconstitutional because of the facial overbreadth of the words used. We point out, however, that in *Milwaukee v. Wilson,* 96 Wis. 2d 11, 291 N.W.2d 452 (1980), we concluded that the presence of an intent element was crucial to preserving the constitutionality of a prostitution-loitering ordinance.[14]

The city also urges that the ordinance be construed in such a manner as to preserve its constitutionality. If at all possible, an ordinance or statute should be construed to preserve its constitutionality. The city acknowledges that protected speech cannot be controlled but asserts that a proper construction would render the ordinance constitutional. It urges that "[t]he ordinance should be found to include only physical conduct or verbal conduct which is not protected, i.e., 'fighting words.' "

While it is our obligation to so construe the ordinance as to preserve its constitutionality, we cannot in

[14]*Houston v. Hill,* at 469, n.18, stated, however, that "speech does not necessarily lose its constitutional protection because the speaker intends it to interrupt an officer, nor would an intent requirement cabin the excessive discretion the ordinance provides to officers."

this case do so. The ordinance is unambiguous. Not only from the dictionary definition of the words referred to above that are clearly applicable to speech alone, but also from the statement that interfering, preventing, or hindering in "*any way,*" we are precluded from excluding by construction verbal means of accomplishing what the ordinance prohibits. We cannot construe out of the ordinance the prohibitions that chill the first amendment rights of free speech. It is unambiguously overbroad. Nor can we even venture an opinion of the original intent of the drafters 135 years ago. As stated in footnote 12, one purpose of the ordinance might well have been to prevent the rescue of fugitive slaves from the toils of the slave catchers. But even this is sheer speculation. Without any guideline of the purpose of this very old ordinance, such construction would of necessity be not to give the legislation the meaning the enacting body intended it to have, but for us to give it the meaning and intent that we conclude it must have now—135 years later—to preserve its constitutionality. This would be judicial legislation of unparalleled audacity. We decline to rewrite the ordinance. In view of the unambiguous meaning of the ordinance—that even protected speech falls within its sweep—no reconstructive manipulation can preserve it. As the Court stated in *Shuttlesworth v. Birmingham,* 394 U.S. 147, 153 (1969), not even "a remarkable job of plastic surgery upon the face of the ordinance" can save it. We conclude that the ordinance is constitutionally defective for overbreadth—for its chilling effect on protected speech—and no construction of the ordinance by this court can preserve its constitutionality.

The municipal court, and the circuit court correctly affirming it, so found. We hold that a municipal court

has the judicial power to determine the constitutionality of an ordinance that is properly within its jurisdiction.

We affirm the order of the circuit court which affirmed the order of the municipal court dismissing the city's complaint on the merits because the ordinance was unconstitutionally overbroad.

*By the Court.*—Order affirmed.

STEINMETZ, J. (dissenting). The majority holds that a municipal court in Wisconsin has the authority to declare a municipal ordinance unconstitutional. The majority also holds that city of Milwaukee ordinance 2-138 (1979) is unconstitutionally overbroad on its face. Because I disagree with the majority's analysis and conclusions, I dissent. I would reverse the decision of the circuit court.

Municipal courts in Wisconsin are not constitutional courts;[1] rather, they are the product of legislative enactment.[2] As such, they have no jurisdiction except that which is conferred upon them by statute. While it may be presumed that a particular creating statute endows a superior court with jurisdiction, no presumption exists as to inferior courts such as municipal courts. 20 Am. Jur. 2d *Courts* sec. 28 (2d ed. 1965). In fact,

---

[1]Although municipal courts are permitted by Article VII, sec. 2 and discussed in Article VII, sec. 14 of the Wisconsin Constitution, they are not created by the Wisconsin Constitution.

Article VII, sec. 2 of the Wisconsin Constitution reads:

> The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature under section 14.

[2]Section 755.01, Stats., gives municipalities the authority to create municipal courts.

jurisdiction conferred upon municipal courts by statute must be express. 57 Op. Att'y Gen. 11, 14 (1968); 9A E. McQuillin, *The Law of Municipal Corporations,* sec. 27.02 (C. Keating 3d ed. 1986); C. Sands, *Local Government Law,* sec. 11.28 (1981).

Clearly, sec. 755.045, Stats.,[3] which prescribes the jurisdiction of municipal courts, makes no express grant of jurisdiction to declare an ordinance unconstitutional. Arguably, the jurisdiction that the majority purports the municipal courts to have in this case is not even implied in the statute. Because the municipal courts in Wisconsin are endowed neither by the constitution nor by statute with the authority to declare unconstitutional a municipal ordinance, the majority has reached a mistaken result.[4]

---

[3]Section 755.045, Stats., reads:

**Jurisdiction.** (1) A municipal court has exclusive jurisdiction over an action in which a municipality seeks to impose forfeitures for violations of municipal ordinances of the municipality which operates the court, unless the action is transferred under s. 800.04(1) or 800.05(3) to a court of record. If equitable relief is demanded the municipal court does not have jurisdiction and the action must be brought in a court of record.

(2) A municipal judge may issue civil warrants to enforce matters which are under the jurisdiction of the municipal court. Municipal judges are also authorized to issue inspection warrants under ss. 66.122 and 66.123.

(3) A municipal judge may order the payment of restitution for violations of ordinances in conformity with s. 943.24 or 943.50. The judge shall use the restitution procedure under s. 943.24(5) or 943.50(5), as applicable.

[4]While courts "have inherent power to do all things that are reasonably necessary for the administration of justice," that power is confined "within the scope of their jurisdiction." 20 Am. Jur. *Courts* sec. 79 (2d ed. 1965). That is, where there is no jurisdiction, a court does not have inherent powers.

*Just v. Marinette County,* 56 Wis. 2d 7, 201 N.W.2d 761 (1972), logically and reasonably requires my conclusion. In *Just,* we determined that trial courts, as such, have authority to pass on constitutional issues. *Id.* at 26. As article VII, sec. 2 of the Wisconsin Constitution itself makes clear, Wisconsin distinguishes "trial courts" from "municipal courts." In essentially characterizing our conclusion in *Just* as a singular exception to the long-standing rule that "inferior courts" normally should regard a legislative enactment as constitutional until the contrary is decided by a court of appellate jurisdiction, we specifically referred to "trial courts," identifying them with "circuit courts." *Id.* at 24–26. *Just's* holding is properly extended only to trial courts, *i.e.,* circuit courts, and not to inferior courts such as municipal courts. Indeed, it is patently unreasonable to extend the *Just* exception to municipal courts. *Just* requires, with good reason, that any constitutional issues be "thoroughly briefed" and "fully presented" to the court, *Id.* at 26, whereas in municipal court it is often the case that no counsel is available on behalf of the defendant.[5]

As the majority acknowledges, municipal courts, unlike trial courts, are not courts of record. Majority op. at 215. Indeed, sec. 800.13(2), Stats., says as much. The majority ignores the significance of this distinction. Nevertheless, the distinction has been acknowledged by the United States Supreme Court. In *Houston v. Hill,* 482 U.S. 451, 470–71 (1987), the Houston municipal courts apparently did not rule on the question of the constitutionality of the ordinance. However, the Supreme Court evidently considered the Houston municipal courts to have had the authority to do so precisely because they are courts of record. "It is undis-

---

[5]Neither this court nor the legislature has imposed the right of counsel in a municipal court proceeding.

puted that Houston's Municipal Courts, which have been courts of record in Texas since 1976, have had numerous opportunities to narrow the scope of the ordinance." *Id.* at 469–70.

Because Wisconsin municipal courts are not courts of record, they are able to provide something of a summary procedure, less costly and less protracted than the procedure used in courts of record, in applying local regulations to the facts of a particular case. Certain legal technicalities that may encumber an ordinary proceeding are generally dispensed with in municipal court proceedings. As the United States Supreme Court announced in *Colten v. Kentucky,* 407 U.S. 104, 117 (1972):

> '[T]he inferior courts are not designed or equipped to conduct error-free trials, or to insure full recognition of constitutional freedoms. They are courts of convenience, to provide speedy and inexpensive means of disposition of charges of minor offenses.'

In other words, municipal courts, by definition and necessity, are not courts in which the fullest and most careful legal consideration is given to the issues presented, generally speaking.

In this connection, I would invoke the well established maxim that questions involving the interpretation and application of the constitution must be approached with the greatest possible deliberation. 20 Am. Jur. 2d *Courts,* sec. 66 (2d ed. 1965). Even those courts which have jurisdiction to declare an ordinance unconstitutional must exercise that power with the greatest possible caution and even reluctance. *Id.* Clearly, municipal courts are neither formulated nor equipped to provide the particularly careful attention needed to pass on constitutional issues.

238

Even assuming that counsel is available in any given case before the municipal court, there is another important consideration that the majority fails to recognize: municipal court judges are not required to be attorneys at law. According to a very recent study using raw data furnished by this court, only about 40 percent of all municipal court judges in Wisconsin are attorneys.[6] *See* Wisconsin Municipal Judges Association Court Survey (5th ed. 1990). Formally uneducated in constitutional law, non-attorney municipal judges may not be adequately trained so as to be able to declare an ordinance unconstitutional.[7] Insofar as this raises any concern as

---

[6]The majority asserts that "[t]he fact [that] municipal judges need not be lawyers is irrelevant to the municipal courts' power to declare legislation unconstitutional." Majority op. at 222 n.10. The majority then attempts to equate the professional responsibilities and continuing education requirements of the municipal court judges with that of the judges of the circuit court, court of appeals and supreme court. Majority op. at 223 n.11. In so doing, the majority ignores the fact that, at least in numerical terms, the continuing education required of municipal judges is a far cry from that required of judges of the other courts. *See generally* SCR ch. 32 and SCR ch. 33.

[7]In fact, a reading of the Wisconsin Municipal Judges Manual itself suggests that municipal judges do not have the training or power to pass on constitutional questions. That is because the manual, although it instructs municipal judges in making a determination as to statutory validity of an ordinance, mentions nothing as to a municipal judge's making a determination of the constitutional validity of an ordinance. *See* Wisconsin Municipal Judges Manual 11-1-11-2 (1989). Nowhere in the manual is there any suggestion to municipal judges being trained in even such basic constitutional review matters as the burden of proof upon review. Nor does any such training appear to be offered at the periodic seminars and conferences held for municipal judges. Certainly none was offered in 1990. *See* Agenda from Municipal

239

to the ability of municipal courts in Wisconsin to fully and equally deliver justice to all who appear before them, it is inappropriate for the majority to conclude, as it presumptively does, that municipal courts have the constitutional jurisdiction with which the well represented defendant as here would endow them. The result of the majority's decision may well be that, in the future, constitutional ordinances will be invalidated as unconstitutional.[8]

The fact that municipal courts have neither the jurisdiction nor the practical wherewithal needed to exercise jurisdiction to declare an ordinance unconstitutional is related to the very nature of the actions that municipal courts address. First of all, constitutional issues arise very infrequently in municipal courts. L. Wasby, *Public Law, Politics and the Local Courts,* 14

Judge Orientation Seminar (June 4-5, 1990); Agenda from 1990 Special Topic Seminar: The Statutes and the Reality of Municipal Court (March 22-23, 1990); Agenda from 1990 Municipal Judge Traffic Seminar (August 20-21, 1990); Agenda from Municipal Judge Trial Seminar (October 4-5, 1990).

As will be noted later in this dissenting opinion, judges in courts that have jurisdiction to pass on constitutional issues have the responsibility of crafting a limiting construction where such is necessary and possible. Such a task requires skills and a knowledge of constitutional law that, at least in some instances, would seem to require that the judge have gained a formal constitutional law education.

[8]Unrelated to the issues of legal representation and the formal educational background of municipal court judges but nevertheless expository of the informality with which municipal court proceedings historically have been conducted, the legislature has considered it necessary to instruct that no municipal court judge may "keep his or her office or hold court in any tavern, or in any room in which intoxicating liquors are sold, or in any room connecting therewith." Section 755.09(2), Stats.

Journal of Public Law 105 (1966). As a natural consequence, in the rare circumstance of a constitutional issue actually surfacing, the municipal judge will be unpracticed in addressing it, even if he is an attorney. Particularly if the municipal judge is not an attorney, his potential disadvantage in being able to address the issue will be reinforced and exaggerated by his practical lack of familiarity and experience with constitutional issues.

In addition, an action for violation of a municipal ordinance is civil rather than criminal in nature. Section 800.02(1), Stats.; *State ex rel. Prentice v. County Court,* 70 Wis. 2d 230, 241, 234 N.W.2d 283 (1975). This rule is well-settled generally. *See e.g.,* E.C. Yokley, *Municipal Corporations* sec. 376 (1957). There are two primary reasons for the rule. "The first is that only the state is the sovereign, and that only an offense against the sovereign is a crime." *Prentice,* 70 Wis. 2d at 241. "Another reason is that violations of municipal ordinances are minor offenses for which a forfeiture is the only permissible direct punishment." *Id.* at 241–42. This court has said that, at least to the extent that the potential forfeiture does not exceed $500, there is no criminal penalty involved. *State v. Kramsvogel,* 124 Wis. 2d 101, 369 N.W.2d 145, *cert. denied* 474 U.S. 901 (1985). Under the ordinance in question in this case, the maximum forfeiture is $250.[9]

---

[9] A facial reading of the ordinance in question in this case might suggest that incarceration for a period of up to six months—a criminal penalty—might directly result if a defendant were to be unsuccessful on the merits. However, it has been clear for many years, as *Prentice* indicates, that Wisconsin municipalities may not apply criminal sanctions as direct punishment for ordinance violation. As to any facial invalidity of the ordinance, then, I note that court has the power to construct a statute or an ordinance so as to find it compatible with existing law. If nothing

Thus, the proceeding in this case clearly was civil and not criminal in nature. Given that civil proceedings are to be less closely examined than criminal ones, *Record Head Corp. v. Sachen,* 682 F.2d 672, 676 (7th Cir. 1982), it is all the more clear that the municipal court did not have any legitimate basis upon which to declare unconstitutional the civil ordinance in question.[10]

Although it denies it is doing so, the majority essentially asserts that because a municipal court judge pledges to uphold the constitution when he takes his

else, the court can simply "read out" of the ordinance the references to possible incarceration as those references now are phrased; it is not the case that the entire ordinance must be invalidated. *See State ex rel. McStroul v. Lucas,* 251 Wis. 285, 29 N.W. 73 (1947). Moreover, as a practical matter, there is no indication in this case that the defendant would have been subject to incarceration as a direct penalty of losing on the merits, or that, assuming what must be regarded as the remote possibility of incarceration for failure to pay a forfeiture, *see Kramsvogel,* 124 Wis. 2d 101, 120, the jail time that the defendant might have been ordered to serve for violation of the ordinance would have exceeded 90 days, the maximum amount of time sanctioned under sec. 800.09, Stats. In any case, the defendant in this case has never argued that the ordinance is invalid by virtue of the issue considered in this paragraph.

[10]Civil proceeding or not, the very long life of the Milwaukee ordinance offers an additional argument against the municipal court's ability to pass on the question of the ordinance's constitutionality. In *State v. Stehlek,* 262 Wis. 642, 645–46, 56 N.W. 514 (1953), this court indicated that a non-appellate court was without jurisdiction to pass on the constitutionality of legislation that had been in effect for "nearly eight years." Even after *Just,* I submit, *Stehlek* remains applicable to municipal courts, especially where, as here, the ordinance has been on the books for over 135 years.

oath of office, a municipal court has the authority to declare an ordinance unconstitutional as did the municipal court in this case. Majority op. at 221–222. This is a nonsequitur. As even the majority points out, *Id.* at 222, Wisconsin's constitutional officers, legislators, and members of the bar all take oaths to uphold the constitution; their reading of their oaths does not endow them or their respective positions with the authority to pass upon constitutional issues that might surface in a court. The majority confuses the oath made by the particular judge with the jurisdiction of the court in general.

The conclusion I draw has support in the case law of other jurisdictions. For example, the New Jersey Superior Court has noted that a "municipal court is an inferior court and it is not ordinarily within its purview to deal with debatable questions relating to the constitutionality of statutes, especially those of long standing." *State v. Celmer,* 384 A.2d 894 (N.J. Super. Ct. App. Div. 1978), *rev'd on other grounds,* 404 A.2d 1 (N.J. 1979). Other courts have indicated that a municipal court has jurisdiction to pass upon constitutional issues only under circumstances where the municipal court proceedings are regarded, because of the relative severity of the possible penalties prescribed by the respective ordinances or because of statutory grants of criminal jurisdiction conferred upon the municipal court, as criminal in nature. *See, e.g., West v. Winnsboro,* 252 La. 605, 211 So. 2d 665 (1967); *State v. Price,* 105 Ohio St. 376, 152 N.E.2d 776 (Ohio Ct. App. 1957). Even where the municipal court proceeding was regarded as criminal in nature, one court concluded that it would be improvident to permit the "poorly equipped" municipal court jurisdiction to pass upon the constitutional question at issue. *Aluminum Cooking Utensil Co. v. City of North Bend,* 210 Or. 412, 311 P.2d 464, 467 (1957). These courts obviously recog-

nize that to burden municipal courts with a responsibility they are not authorized or equipped to handle jeopardizes the fair and proper delivery of justice by the municipal courts.

In conclusion, then, I submit that municipal courts in Wisconsin do not have jurisdiction to declare municipal ordinances unconstitutional. Moreover, it simply is not wise to put Wisconsin municipal courts in a situation in which some are called upon to accomplish things for which they are inadequately trained. Allowed to carry out their useful and necessary function of considering the merits of the case before them, Wisconsin municipal courts, which have earned a reputation for excellence, will continue to be a widely esteemed pillar of the judicial function of government. Asked by the majority to go beyond their constitutional and statutory mandate, municipal courts could potentially lose some of the popular respect they now enjoy and deserve.[11]

If a defendant wishes to raise constitutional objections to a given ordinance, the proper approach, assuming the defendant is not successful on the merits of his case in municipal court, is for the defendant to address his constitutional concerns on appeal to the circuit court, pursuant to sec. 800.14, Stats., in which case the

---

[11]According to certain studies, the municipal judges of certain other states have indicated a lack of confidence in the ability of municipal courts to accord constitutional protections to those members of the public, particularly the poor and unrepresented, who appear before them. See M. Kaye and F. Yaffe, *Trial de Novo: An Attitudinal Profile of Two-Tiered Lower Criminal Courts,* 10 Law & Psychology Review 19, 40 (1986). Other surveys indicate that the public itself has little faith in at least some municipal court systems. R.C. Thomas, *Amendment 64—An Opportunity,* Arkansas Lawyer 168 (July 1986). The majority's decision will open the door to such problems in Wisconsin.

defendant receives a trial *de novo. See, e.g., State ex rel. Beaudry v. Panosian,* 35 Wis. 2d 418, 151 N.W.2d 48 (1967). As *Just* makes clear, constitutional questions are properly considered at trial to the circuit court.

I also dissent as to the majority's conclusion that the Milwaukee ordinance is unconstitutional. As the majority has shown, Milwaukee ordinance 2-138 (1979)[12] is, at first glance, facially overbroad. Unfortunately, that is where the majority's analysis effectively ends, and where its error begins. The majority gives only perfunctory attention to the duty of this court to devise a limiting construction of the ordinance so as to render it constitutional if such is possible. Further analysis shows that the ordinance can be rendered constitutional.

"[T]his court must interpret an ordinance, as it would a statute, to preserve its constitutionality." *Milwaukee v. K.F.,* 145 Wis. 2d 24, 47, 426 N.W.2d 329 (1988). "It is elementary that an ordinance is presumed to be constitutional and that the attacking party must establish its invalidity beyond a reasonable doubt." *J&N Corp. v. Green Bay,* 28 Wis. 2d 583, 585, 137 N.W.2d 434 (1965). "[T]his court will not interfere with a municipality's exercise of police power unless it is clearly illegal." *Id.*

---

[12]Milwaukee ordinance 2-138 reads:

**Resisting Officer.** Whoever in this city shall resist, or any way interfere with any police officer or member of the police department in the discharge of his duty, or shall hinder or prevent him from discharging his duty as such officer or member, or shall offer or endeavor so to do, and whoever shall in any manner assist any person in custody of any officer or member of the police department to escape from such custody, or shall rescue or attempt to rescue any person in custody, shall forfeit a penalty of not less than ten dollars ($10), nor more than two hundred and fifty dollars ($250), or be imprisoned in the house of correction for not less than thirty (30) days nor more than six (6) months, or by both such fine and imprisonment.

As noted by the United States Supreme Court in *Broadrick v. Oklahoma,* 413 U.S. 601, 613 (1973), challenged legislation generally should not be found facially overbroad "when a limiting construction has been or could be placed" on it. In this regard, the Supreme Court looks for state courts to craft a suitable limiting construction. State legislation or a municipal ordinance "should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts." *Id.* Indeed, only the state courts can supply the requisite narrowing construction, since the Supreme Court lacks jurisdiction to authoritatively construe state legislation. *Gooding v. Wilson,* 405 U.S. 518, 520 (1972).

The majority fails to take up the task of crafting a suitable limiting construction. Instead, at majority op. at 230, the majority cites *Hill.* In *Hill,* the Supreme Court found unconstitutionally overbroad an ordinance that prohibited any person "in any manner [to] . . . interrupt" any policeman in the execution of his duty. The majority focuses on the ordinance's use of the words "in any manner," likening it constitutionally to the words "any way" used in the Milwaukee ordinance regulating that a person may not "resist, or any way interfere . . .." Majority op. at 231.

The most notable feature of the majority's discussion in this regard is that it fails to consider that in *Hill* the state courts had never even attempted to craft a limiting construction upon that ordinance.[13] *Hill,* 482 U.S. at 469–71. Had the state courts prescribed a limiting construction, the Supreme Court would have been bound by it. *Terminiello v. Chicago,* 337 U.S. 1, 4 (1949).

---

[13]After being acquitted in municipal court on the merits of the charge he was facing, Hill brought suit in federal district court challenging the ordinance's constitutionality and seeking, *inter alia,* damages and attorney's fees. *Hill,* 482 U.S. at 455.

It is possible that the Supreme Court in *Hill* might have concluded that the result of a particular limiting construction devised by the state courts was to render the ordinance not constitutionally overbroad.[14]

Thus, *Hill* is poor precedent for the majority. If need be, this court has the power to completely sever from an ordinance arguably constitutionally objectional words, leaving intact the rest of the ordinance. *See Madison v. Nickel*, 66 Wis. 2d 71, 223 N.W.2d 865 (1974); *see also State ex rel. McStroul v. Lucas*, 215 Wis. 285, 29 N.W. 73 (1947). Insofar as the words "any way" in the Milwaukee ordinance are truly objectionable, this court can simply sever those words from the ordinance.

The majority also suggests that the ordinance is unconstitutional because it "could apply irrespective of any purpose or 'intent.' " Majority op. at 233. In *City of Milwaukee v. Nelson,* 149 Wis. 2d 434, 453, 439 N.W.2d 562 (1989), *aff'g* 142 Wis. 2d 944, 419 N.W.2d 573 (Ct. App. 1988), however, this court found the particular ordinance in question in that case not overbroad even though it, like the ordinance here, did not contain an element of intent. Whether or not an ordinance contains an intent element clearly is not dispositive of the ordinance's constitutionality.

For its part, the City of Milwaukee has submitted that, as a matter of police practice, the ordinance in question here does not apply to all verbal conduct as such but only to physical conduct and "fighting words."

---

[14]The majority also suggests that the term "any way" in the Milwaukee ordinance modifies not only "interfere" but also the words "prevents" and "hinders" as used in the statute. Majority op. at 231. In fact, there appears to be little basis for such a suggestion by the majority. The text of the ordinance clearly indicates that in reality the term "any way" applies only to the word "interfere."

For all intents and purposes, the majority has ignored Milwaukee's argument.[15] In doing so, it also has ignored the longstanding rule that, in construing an ordinance for constitutionality, a court should consider "very persuasive" the particular construction given by those responsible for enforcement of the ordinance. *Adams Express Co. v. New York,* 232 U.S. 14, 30–31 (1914). *Cf. Milwaukee Fire Fighters Assoc. v. Milwaukee,* 50 Wis. 2d 9, 18, 183 N.W.2d 18 (1971) (the practical administrative construction of an ordinance over a long period of time is entitled to great weight). Had the majority given due consideration to Milwaukee's construction of the ordinance, it would have found the ordinance not constitutionally overbroad.

Given this court's duty, as articulated in *K.F., J&N Corp.* and other case law, to find an ordinance constitutional if at all possible,[16] it is unfortunate that the majority does not even attempt a limiting construction. The ordinance here quite easily could be constructed so as to reach only physical conduct and "fighting words."[17] The majority's dictionary definitions of the words "resist," "interfere," "hinder," and "prevent," majority op. at 230, do little to advance the majority's position. "Each of

---

[15]The majority refuses to consider Milwaukee's arguments while admitting that it cannot "even venture an opinion of the original intent of the drafters 135 years ago." Majority op. at 234. "We know nothing of the legislative history, the particular facts, or societal problems that impelled the passage of the Milwaukee ordinance." *Id.* at 228.

[16]Following *Stehlek,* 262 Wis. 642, this is particularly the case when an ordinance has been on the books for an extended period of time, as has been the ordinance in this case.

[17]That is, physical conduct and "fighting words" could be considered to be regulated by the ordinance at least insofar as such a proscription would not be preempted by state statute.

these [words], with the possible exception of 'resist,' " the majority asserts, "could as reasonably refer to verbal expression as to conduct." Majority op. at 230.

That is not, at least it should not be, the question. The question should be whether the words and the ordinance as a whole can be construed so as not to be overbroad. As a preliminary matter, given the meaning attributed to "resist," "interfere," "hinder," and "prevent" in common usage, the words arguably relate primarily to physical and not to verbal conduct. In any case, within the ordinance, they can be construed in a limited way so as to be rendered constitutional in general application. Furthermore, if necessary, an "intent" element can be read into the ordinance. *See State v. Williams,* 534 A.2d 230 (Conn. 1987). Such a construction certainly would render the ordinance here constitutional.

One might hypothesize, as does the majority opinion, situations in which the ordinance might unconstitutionally intrude upon a third party's first amendment rights. "However, in analyzing the constitutionality of potential applications of a regulation, the court should not deem an ordinance invalid because in some conceivable, but limited, circumstances the regulation might be improperly applied." *K.F.,* 125 Wis. 2d at 40.

Even after *Hill,* courts in other jurisdictions have construed legislation very similar to the Milwaukee ordinance to be constitutional. For example, in *Matter of E.D.P.,* 573 A.2d 1307 (D.C. App. 1990), the court construed as constitutional a hindering statute that made it unlawful to "assault," "resist," "oppose," "impede," "intimidate," or "interfere" with a police officer or government supervisor of juveniles. The court said:

> [The statute] can be narrowly construed to apply to physical conduct rather than speech. [Citations omitted.] As applied to appellant, the statute can be con-

249

strued to prohibit individuals from physically oppos-
ing District juvenile supervisors. This construction is
consistent with the plain language of the statute,
eliminates free speech and assembly concerns, and
sufficiently clarifies the standard of conduct required
by the statute.

573 A.2d at 1309.

In *Wilkerson v. State,* 556 So. 2d 453 (Fla. App.
1990), a Florida court of appeals chose to limit and save
that state's resisting statute. That statute generally
made it unlawful to "obstruct or oppose" a police officer
in the execution of his or her duty "without offering or
doing violence to the person of the officer." 556 So. 2d at
454. The defendant was arrested after yelling at the
police officers (who were arresting drug sellers) and
refusing to leave the area. The court said it did not
"construe the language of [the statute] as reaching pro-
tected free speech." *Id.* at 455. "[W]e agree with the
state's argument that this statute may be given a limit-
ing construction that avoids the overbreadth deficiency
found in the Houston ordinance by the Court in *Hill.*"
*Id.* at 456.

Other jurisdictions as well have distinguished *Hill*
and have imposed limiting constructions on ordinances
alleged to have been unconstitutionally overbroad. *See
Williams; State v. Krawsky,* 426 N.W.2d 875 (Minn.
1988). *See also People v. Dietze,* 75 N.Y.2d 47, 549
N.E.2d 1166 (1989) (Wachtler, C.J., concurring).

Milwaukee ordinance 2-138 (1979) has a legitimate
purpose—primarily to prohibit acts or conduct that
operate to physically oppose an officer in the perform-
ance of his lawful duties. The ordinance can and should
be constructed so as not to be unconstitutionally over-
broad. The majority ignores the opportunity and duty it

has to save this statute from extinction. I therefore dissent and would reverse the holding of the trial court.

I am authorized to state that JUSTICE LOUIS J. CECI joins this dissenting opinion.