LOUNGE MANAGEMENT, LTD., Plaintiff-Appellant,

v.

TOWN OF TRENTON, Defendant-Respondent.

Supreme Court

*No. 96–1853. Oral argument December 3, 1997.—Decided June 18, 1998.*

(On certification from the court of appeals.)

(Also reported in 580 N.W.2d 156.)

For the plaintiff-appellant there were briefs by *Matthew A. Biegert* and *Doar, Drill & Skow, S.C.*, New Richmond and *Randall D.B. Tigue* and *Randall Tigue Law Offices, P.A.*, Minneapolis, MN and oral argument by *Randall D.B. Tigue*.

For the defendant-respondent there was a brief by *Catherine R. Quiggle* and *Rodli, Beskar, Boles & Krueger, S.C.*, River Falls and oral argument by *Catherine R. Quiggle*.

¶ 1. ANN WALSH BRADLEY, J. This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (1995–96).[1] The plaintiff, Lounge Management, Ltd. (Lounge Management), appeals from a circuit court order[2] denying injunctive relief and from a declaratory judgment upholding the constitutionality of an anti-public nudity ordinance. Lounge Management contends that the dis-

---

[1] Unless otherwise noted, all future statutory references are to the 1995–96 volumes.

[2] Circuit court for Pierce County, Robert W. Wing, Judge.

puted ordinance is facially overbroad as well as unconstitutional as applied. Because we find the anti-public nudity ordinance to be overbroad, in violation of the First Amendment to the United States Constitution, we reverse the judgment of the circuit court.

¶ 2. Lounge Management operates a nightclub in rural Town of Trenton (the Town), in Pierce County, pursuant to a Class B liquor license. On the date Lounge Management obtained its liquor license, the Town maintained an existing ordinance banning public nudity in "licensed establishments," (the Ordinance).[3]

---

[3] Town of Trenton Ordinance No. 10 states:

AUTHORITY: This ordinance is enacted pursuant to power granted by virtue of present Wisconsin Statutes, including Section 125.10.

RESTRICTIONS: There shall be no public nudity at a public licensed establishment.

DEFINITION: *Nudity* means the showing or exposing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple.

Public means any place of accommodation or amusement, which shall be interpreted broadly to include, but not be limited to, places of business or recreation, hotels, motels, resorts, restaurants, taverns and any place where accommodations, amusement, goods or services are available either free or for a consideration. Campgrounds are also included.

Exceptions.

A. This ordinance is not to be interpreted as restricting the proper use of a bathroom facility by a male or female in an enclosed area where the person is of the same sex designated for such room, and is not engaged in for any sexual or exhibitionist purpose to or in front of or adjacent to other persons.

B. This ordinance is not to be interpreted to prevent activities in rooms privately rented in a hotel, motel, resort, or camper if at a campground, if the person(s) involved rented such private facility or owns it and has not invited or allowed members of the public, who are not immediate family members, to be at such location.

Five days after the Town Board approved Lounge Management's liquor license, Lounge Management decided to offer nude and semi-nude dancing at its facility. It filed suit requesting temporary and permanent injunctions against the Town, prohibiting the Town from enforcing the Ordinance. Lounge Management also sought a judgment pursuant to 42 U.S.C. § 1983 (1994) declaring the Ordinance void under the First Amendment to the United States Constitution, and Art. I, § 3 of the Wisconsin Constitution.[4] The Town answered by asserting the constitutionality of the Ordinance, and later amended its answer to allege that Lounge Management's suit was brought in violation of the notice of claim requirements of Wis. Stat. § 893.80.

¶ 3. The circuit court denied Lounge Management's request for a preliminary injunction, finding it probable that the Ordinance would be declared a constitutional exercise of the Town's power to regulate nude dancing as part of the liquor licensing process. In doing so, the circuit court relied upon *Schultz v. City of Cumberland*, 195 Wis. 2d 554, 536 N.W.2d 192 (Ct. App. 1995) (holding municipal ordinance banning nude performances valid because state's delegation of power to regulate sale of alcohol under Twenty-first Amendment included the lesser power to ban sale of liquor in establishments with nude dancing) and *City of New-*

---

VIOLATION. Each violation of this ordinance shall result in a forfeiture. . . . [V]iolation constitutes sufficient grounds for board consideration of license suspension, revocation, or nonrenewal where such violation occurred in conjunction with or related to the activity licensed for.

[4] Lounge Management also claimed that the Ordinance was void for vagueness. The circuit court denied the claim and Lounge Management does not appeal that portion of the circuit court's ruling.

*port v. Iacobucci*, 479 U.S. 92 (1986) (same). Also anticipating an overbreadth challenge, the circuit court followed *State v. Thiel*, 183 Wis. 2d 505, 515 N.W.2d 847 (1994), and narrowly construed the disputed Ordinance to apply only to establishments with liquor licenses. The Town then filed a motion to dismiss.[5]

¶ 4. The circuit court denied the Town's motion to dismiss, ruling that while the notice of claim provisions present in Wis. Stat. § 893.80 applied to Lounge Management's suit, "[f]ailure to comply with the notice requirements of Wis. Stat. § 893.80 is a defense related to personal jurisdiction and is deemed waived by the defendant's failure to raise it in its original answer." The circuit court also entered a declaratory judgment on the constitutionality of the Ordinance and reaffirmed its preliminary holding that the Ordinance, as construed, was constitutional.

¶ 5. Lounge Management appealed the circuit court's decision. Faced with what it viewed as conflicting precedent concerning the constitutionality of anti-public nudity ordinances, *Fond du Lac County v. Mentzel*, 195 Wis. 2d 313, 536 N.W.2d 160 (Ct. App. 1995) (finding county ordinance prohibiting nudity of entertainers during performances constitutional as applied, but facially unconstitutional due to overbreadth) and *Schultz*, the court of appeals certified the case to this court.

¶ 6. Having accepted certification on all issues before the court of appeals, we must first consider the

---

[5] The Town's motion to dismiss was supported with material beyond the four corners of the complaint. Accordingly, while we use the terms in the record, the motion is more properly classified as one for summary judgment.

Town's claim that this suit should be dismissed due to Lounge Management's failure to file a notice of claim against the Town pursuant to Wis. Stat. § 893.80.[6] We note that the plaintiff challenges the Ordinance both under the federal constitution pursuant to 42 U.S.C. § 1983 and the state constitution. Federal constitutional challenges brought under § 1983 cannot be barred by Wisconsin's notice of claim requirement. *See Felder v. Casey*, 487 U.S. 131 (1988) (holding application of state notice of claim provision preempted by federal civil rights claim). Accordingly, we proceed to consider Lounge Management's constitutional challenge to the Ordinance under the First Amendment.[7]

¶ 7. The substantive questions presented then are whether the Ordinance is unconstitutional on its face, due to overbreadth, or unconstitutional as specifically applied to Lounge Management. Both inquiries implicate the First Amendment to the United States Constitution. Such constitutional challenges are ques-

---

[6] Wis. Stat. 893.80 states:

(1). . .[N]o action may be brought or maintained against any. . .governmental subdivision. . .or agency thereof. . .unless:

(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the. . .governmental subdivision. . . . Failure to give the requisite notice shall not bar action on the claim if the. . .subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant. . .subdivision or agency. . . .

[7] Because we find the Ordinance unconstitutional as violative of the First Amendment of the United States Constitution, we need not address Lounge Management's failure to file a notice of claim on the state constitutional challenge.

tions of law which we review *de novo. See Association of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 557, 544 N.W.2d 888 (1996).

¶ 8. Statutes and ordinances normally are the beneficiaries of a presumption of constitutionality which the attacker must refute. *See State v. Holmes*, 106 Wis. 2d 31, 41, 315 N.W.2d 703 (1982). However, where an ordinance regulates the exercise of First Amendment rights, the burden shifts to the government to defend the constitutionality of that regulation beyond a reasonable doubt. *See Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 658 (1981); *Thiel*, 183 Wis. 2d at 523; *City of Madison v. Baumann*, 162 Wis. 2d 660, 669, 470 N.W.2d 296 (1991).

¶ 9. Nude dancing has been acknowledged to include an expressive element, and accordingly is entitled to at least some degree of constitutional protection. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565 (1991); *Id.* at 581 (Souter, J., concurring); *Id.* at 587 (White, J., dissenting). However, it is also a recognized constitutional principle that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

¶ 10. In such instances, the government may infringe upon First Amendment freedoms to regulate conduct so long as: (1) the targeted conduct falls within the domain of state regulatory power; (2) the statutory scheme advances important or substantial government interests; (3) the state's regulatory efforts are unre-

lated to the suppression of free expression; and (4) the regulations are narrowly tailored. *See O'Brien*, 391 U.S. at 376–77. The United States Supreme Court has splintered, however, over the permissible manner in which the government may reasonably regulate the protected expression inherent in nude dancing.

¶ 11.   In *Barnes*, a plurality of the court applied the *O'Brien* test, but disagreed among themselves over the requisite important or substantial interest that the state needed to show under *O'Brien* when infringing on First Amendment expression. Three Justices, lead by Chief Justice Rehnquist, believed that the state could regulate expressive conduct to promote "public morality" based on its police powers. *See Barnes*, 501 U.S. at 568. Justice Souter, in concurrence, disagreed, but concluded that the state could regulate conduct implicating expression to combat the "secondary effects" that shadow establishments where public nudity occurs, such as prostitution, sexual assault, and other criminal activity. *See id.* at 582–83 (Souter, J., concurring).

¶ 12.   Lounge Management's primary argument is that the Ordinance is so overbroad that it applies to conduct which the state is not entitled to regulate. In order to establish the framework of our overbreadth analysis of the Ordinance, we first must distill the holding of the Court in *Barnes*. If Chief Justice Rehnquist's view is the holding, we must evaluate the reach of the Ordinance in promoting public morality. If Justice Souter's concurrence is the holding, we must question whether the Ordinance is narrowly tailored to address only the secondary effects associated with public nudity in licensed establishments.

¶ 13.   Recognizing the potential precedential problems inherent in fractured opinions, the United

States Supreme Court held in *Marks v. United States*, 430 U.S. 188, 193 (1977), that when the Court issues a splintered plurality decision, courts interpreting that decision should regard the opinion of the Justice concurring on the "narrowest grounds" as the Court's ultimate holding. Applying this rule to the *Barnes* case, we agree with the court of appeals in *Mentzel* that Justice Souter's concurring opinion constitutes the holding of the United States Supreme Court in *Barnes*. *See Mentzel*, 195 Wis. 2d at 326; *see also Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 134 (6th Cir. 1994). Accordingly, we move to an overbreadth examination of the Town of Trenton Ordinance.

¶ 14. The First Amendment is accorded special protection in our federal constitutional framework. *See, e.g., Dombrowski v. Pfister*, 380 U.S. 479, 486–87 (1965), quoted in *Osborne v. Ohio*, 495 U.S. 103, 137 n.12 (1990). Where an otherwise appropriate content-neutral regulation is promulgated in an overly expansive fashion, it may have the collateral effect of chilling constitutionally protected expression or allowing selective enforcement that may discriminate against certain classes of people. Those unintended results are constitutionally intolerable. *See id.*; Richard R. Fallon, *Making Sense of Overbreadth*, 100 Yale L. J. 853, 867 (1991).

¶ 15. In such cases, the overbreadth doctrine serves to protect third parties' First Amendment rights. *See Bachowski v. Salamone*, 139 Wis. 2d 397, 411, 407 N.W.2d 533 (1987). The overbreadth doctrine operates to render facially unconstitutional statutes or ordinances that "threaten[ ] others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather

than risk prosecution or undertake to have the law declared. . .invalid." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503 (1985); *see also City of Milwaukee v. Wroten*, 160 Wis. 2d 207, 226, 466 N.W.2d 861 (1991).

¶ 16.  Under this doctrine, a party whose own speech or conduct may be legitimately regulated by a statute or ordinance, or whose speech is not subject to constitutional protections, may assert a facial challenge to an ordinance that on its face encompasses protected speech or conduct of third parties. *See Wroten*, 160 Wis. 2d at 227; *see also City of Milwaukee v. Nelson*, 149 Wis. 2d 434, 451–52, 439 N.W.2d 562 (1989). The overbreadth doctrine "establishes an exception to the general rule that 'a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others.' " *Thiel*, 183 Wis. 2d at 520 (quoting *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989)).

¶ 17.  In assessing this challenge, the court may consider hypothetical situations in which the statute or ordinance might reach too far. *See Brandmiller v. Arreola*, 199 Wis. 2d 528, 547, 544 N.W.2d 894 (1996). However, the court must be cognizant of the fact that application of the overbreadth doctrine is "strong medicine," to be used only where the alleged overbreadth of the statute or ordinance is not only real, but substantial, and "then 'only as a last resort.' " *See New York v. Ferber*, 458 U.S. 747, 769–70 (1982) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 615 (1973)); *see also Thiel*, 183 Wis. 2d at 520; *City of Milwaukee v. K.F.*, 145 Wis. 2d 24, 40, 426 N.W.2d 329 (1988).

¶ 18.  Accordingly, courts must apply a limiting construction to a statute, if available, that will eliminate the statute's overreach, while still "maintain[ing]

the legislation's constitutional integrity." *Thiel*, 183 Wis. 2d at 521; *see Broadrick*, 413 U.S. at 613. Alternatively, a court may sever that portion of the statute which leads to overbreadth, leaving the statute as modified in full effect. *See Thiel*, 183 Wis. 2d at 520.

¶ 19.   Because we determine that Justice Souter's concurrence in *Barnes* is the holding of the Court, we conduct our overbreadth analysis by inquiring whether the Ordinance is drafted in a manner that addresses the secondary effects of adult entertainment, such as prostitution, sexual assault, and other criminal activity, without also suffocating other protected expression in a real and substantial manner. We first examine the language of the Ordinance on its face. If we determine that it is overbroad, we then consider possible constructions of the Ordinance that may save it. After conducting this inquiry, we find that the anti-public nudity Ordinance encompasses expressive activities that do not implicate the "secondary effects" that the Town may legitimately seek to regulate.[8]

¶ 20.   As the language of the Ordinance indicates, and as defense counsel was forced to concede at oral argument, several hypothetical situations exist in which the Ordinance would impinge on protected

---

[8] We find the Town's reliance upon the court of appeals decision in *Schultz* misplaced. *Schultz* determined that *Barnes* was "not dispositive" because it "was not a Twenty-first Amendment case." *Schultz v. Village of Cumberland*, 195 Wis. 2d 554, 566, 536 N.W.2d 192 (Ct. App. 1995). While this distinction may have deserved some weight in the past, *see City of Newport v. Iacobucci*, 479 U.S. 92 (1986), the United States Supreme Court has recently held that "the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996).

24

expression involving public nudity. Such examples include public exhibition of artwork or artifacts depicting nudity, public display of a television program including brief nudity, and any form of expressive live nudity that occurs in a "public licensed establishment." Such establishments include private hotel rooms, campgrounds, taverns, theaters, or any other place of business, recreation, accommodation, or amusement.

¶ 21. Such overbreadth is largely the result of the generalized terminology used by the Town when drafting the Ordinance and its specific command that portions of the Ordinance be "interpreted broadly." The Ordinance does not prohibit nude dancing—it prohibits all public nudity. The Ordinance does not limit its application to establishments licensed to sell alcohol—it applies to all publicly licensed establishments.[9] The Ordinance does not limit itself to live nudity—it apparently applies to all forms of nude depiction.[10] Accordingly, the Ordinance regulates expressive con-

---

[9] "Public licensed establishment" is an otherwise undefined term that when interpreted in the context of campgrounds, hotels, and restaurants raises a host of possible licensing requirements.

[10] The dissent asserts that we construe the Ordinance "to encompass both public and private nudity and to proscribe both animate nudity and the displaying or exhibiting of inanimate nudes, either in pictures or sculptures." Dissent at 35. The dissent then asserts that "[t]he majority's broad construction of Ordinance 10 contravenes the common sense understanding of 'public nudity.' " *Id.* As counsel for the Town conceded at oral argument, the plain language of the ordinance could be interpreted in just such a manner to apply to inanimate nudity. Moreover, the dissent's statement confuses the order of overbreadth analysis. We first examine the Ordinance as it is written and only then attempt to construe the Ordinance to save it.

duct protected by the First Amendment to the United States Constitution that has no connection to the potential harmful secondary effects arising from nude dancing in liquor licensed establishments and it does so in a real and substantial manner.

¶ 22.  Despite these infirmities, we are cognizant of our obligation to apply a limiting construction to the Ordinance if such a construction is available. The Town argues that the circuit court's narrow construction of the Ordinance to apply only to nude dancing in establishments licensed to sell liquor is sufficient to save the Ordinance from an overbreadth challenge. Alternatively, following the dissent in *Wroten*, the dissent would have this court rewrite the Ordinance by striking a significant portion of it and construing it "to prohibit only animate public nudity at establishments licensed by the Town of Trenton to sell alcohol." Dissent at 35.

¶ 23.  We disagree that either construction is sufficient to save the Ordinance. Due to the existing structure and wording of the Ordinance, we are unable to cure the overbreadth by either striking enough of the Ordinance or providing a sufficiently narrow construction that is not flatly inconsistent with the expressed intent as set forth in its existing terms. We cannot apply a limiting construction which contravenes the expressed intent of the Ordinance. *See Wroten*, 160 Wis. 2d at 227.

¶ 24.  In its attempt to save the Ordinance, the dissent engages in legal and semantic convolutions. The futility of the dissent's attempts to save the Ordinance is particularly emphasized when it negates the plain language of the Ordinance and attempts to explain that the word "showing" does not mean "displaying" or "exhibiting." Dissent at 36. Such an

assertion defies common definition, common usage, and common sense. Yet, such an assertion is necessary for the dissent to arrive at its tortured conclusion that "showing" means "only those live acts performed by a person. . . ." Dissent at 36.

¶ 25.   Similarly futile is the dissent's attempts to explain away the Ordinance's prohibition on nudity between non-family-member consenting adults in a privately rented hotel room. An exception to the Ordinance's prohibition against "public nudity at a public licensed establishment" provides in relevant part:

> This ordinance is not to be interpreted to prevent activities in rooms privately rented in a hotel. . .if the person(s) involved. . .has not invited or allowed members of the public, who are not immediate family members, to be at such location.

As long as you are an "immediate family member" this Ordinance does not apply to prevent activities in rooms privately rented in a hotel. The dissent rewrites the clause, and adds a qualification that contravenes the express language of the Ordinance, indicating that " 'public nudity' does not include the private conduct of consenting adults in private rooms where the general public is not invited or allowed to attend or to participate in such conduct." Dissent at 36–37.

¶ 26.   The dissent also construes the Ordinance to apply only to establishments licensed to sell liquor. Endorsing such a construction requires the dissent to strike and construe so much of the definition that little of the original definition of "public" as in "public licensed establishment," remains:

> Public means ~~any place of accommodation or amusement, which shall be interpreted broadly to~~

include, but not be limited to, places of business or recreation, hotels, motels, resorts, restaurants, taverns [licensed to serve alcohol] and any place where accommodations, amusement, goods or services are available either free or for a consideration. Campgrounds are also included.

Even assuming that a presumption of severability applied to an ordinance drafted by a Town Board, *see Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984), the plain language of the Ordinance indicates an intent by the Town Board to apply the Ordinance in a far broader manner than acknowledged by the construed and severed interpretation of the dissent. Accordingly, severance is also improper. *See Brockett*, 472 U.S. at 506.

¶ 27. As the discussion above indicates, the proffered constructions of the Ordinance are inconsistent with the broadly drafted terms and purpose of the Ordinance. Such construction raises the specter of "judicial legislation." *Wroten*, 160 Wis. 2d at 234. We decline the invitation to engage in such legislation and leave the task of writing a constitutionally permissible Ordinance to that branch of government where such power properly lies—the Town Board. *See id.*

¶ 28. Moreover, even if the acts of construing the Ordinance and striking out such a substantive portion of the Ordinance were an acceptable use of our powers to conform the Ordinance with the Constitution, such a construction must still eliminate the constitutional infirmity of the original Ordinance. However, the ultimate narrowing construction offered by the dissent retains the same basic constitutional infirmity that plagues the Ordinance as drafted.

¶ 29. Even as narrowly construed by the dissent the Ordinance continues to bar protected expression

involving nudity that does not implicate the secondary effects associated with barroom erotic nude dancing that the Town alleges was its primary objective in creating the Ordinance. Examples of artistic expression barred by the Ordinance range from the presentation of a play involving the briefest moment of a woman exposing one breast as part of the script of the production to the hypothetical productions of "Hair" and "Equus" cited by Justice Souter in *Barnes*, or the even more revealing production "L'apres midi d' un faune" discussed by Judge Posner in *Miller v. Civil City of South Bend*, 904 F.2d 1081, 1090 (7th Cir. 1990) (Posner, J. concurring), *rev'd sub nom. Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991). Thus, examples of infringement upon protected expression by the Ordinance range across the artistic gamut.

¶ 30.  While acknowledging that the Ordinance as construed would still bar this protected artistic expression, the dissent continues to attack our finding of overbreadth by asserting that infringement of the First Amendment in this case would not be "real and substantial." In the dissent's view the Ordinance is not a "real and substantial" constraint since a revealing production is only one hypothetical and since there are no dinner theaters or other artistic venues in which such a performance could occur in the rural Town of Trenton.

¶ 31.  In making these arguments, the dissent fails to acknowledge that, as noted above, the Ordinance as construed by the dissent and the circuit court continues to target constitutionally protected activity and continues to bar all artistic expression involving nudity in all establishments licensed to sell liquor. The dissent's attempt to categorize and then generalize away the real-life examples highlighted by this and

other courts is not only short-sighted, it allows a court to reject a valid overbreadth challenge by only considering the single type of expression affected.

¶ 32.   While the construction offered by the dissent may narrow the overbreadth of the Ordinance, we believe the Ordinance as construed, barring all artistic expression involving nudity at licensed establishments, continues to target and infringe upon activities entitled to First Amendment protections in a "real and substantial" manner. This is not a case where the Ordinance's "legitimate reach dwarfs its arguably impermissible application," but rather a case where its impermissible application dwarfs the Ordinance's legitimate reach. *Ferber*, 458 U.S. at 773. This conclusion is consistent with our decisions in *City of Milwaukee v. K.F.*, *City of Milwaukee v. Nelson*, and *Brandmiller v. Arreola.*

¶ 33.   Moreover, the dissent implicitly argues that because the Town of Trenton is a rural community, the effects of the Ordinance on nude artistic expression cannot seriously be taken as an infringement of First Amendment speech. Such a contention misses two important points. First, and most importantly, the First Amendment to the United States Constitution applies universally to all communities within our borders. A violation of the First Amendment is as troubling in a small rural community as it is in a metropolitan area. Second, the primary purpose of the overbreadth doctrine is to prevent the "chilling" of First Amendment speech. As such, the doctrine protects the rights of third parties who, in the face of restrictive legislation, might refrain from exercising their First Amendment rights for fear of criminal prosecution. *See Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980); *Broadrick*, 413 U.S. at

612. Thus, the business demographics of the Town of Trenton, as they currently exist, are irrelevant for purposes of our inquiry.

¶ 34. The Constitution of the United States guarantees certain freedoms and this court is bound to ensure the proper application of those freedoms. While Justices may differ on the application of the law, the court's analysis of the Ordinance at issue is not and cannot be dependent upon a personal view of the propriety or morality of the activities offered at the plaintiff's establishment.

¶ 35. To provide a construction sufficiently remedial to cure the Ordinance's overbreadth, this court would essentially be required to rewrite the Ordinance in its entirety. We decline to legislate in this manner and leave it to the Town Board to enact an Ordinance that both means what it says and comports with federal constitutional principles. The Town has failed to meet its burden in defending beyond a reasonable doubt the constitutionality of the Ordinance. Accordingly, we determine that the Ordinance is overbroad, in violation of the First Amendment to the United States Constitution, and we reverse the judgment of the circuit court.[11]

*By the Court.*—The judgment of the circuit court is reversed.

¶ 36. DONALD W. STEINMETZ, J. (*dissenting*). The majority strikes down as facially unconstitutional the Town of Trenton's Ordinance 10, which proscribes

---

[11] Having determined that the Ordinance is facially overbroad, we need not address the question of whether the Ordinance is constitutional as applied.

"public nudity at a public licensed establishment." In so doing, the majority misapplies well-established principles of constitutional adjudication. Because I disagree with the majority's analysis and conclusion, I dissent.

¶ 37. As the majority has shown, Ordinance 10 is, at first glance, overbroad. Unfortunately, this is where the majority's analysis effectively ends, and where its error begins. The majority concludes that Ordinance 10 is unconstitutionally overbroad because it "encompasses expressive activities that do not implicate the 'secondary effects' that the town may legitimately seek to regulate." Majority op. at 23–24. Arriving at this legal conclusion, the majority makes two fundamental errors. First, the majority refuses to accept an available, limiting construction of Ordinance 10 which would cure any substantial overbreadth. *See State v. Thiel,* 183 Wis. 2d 505, 522, 515 N.W.2d 847 (1994); *see also Broadrick v. Oklahoma,* 413 U.S. 601, 613 (1973). Second, despite controlling case law to the contrary, the majority concludes that the Ordinance's overbreadth is both real and substantial after conceiving of a single impermissible application of that ordinance. *See City of Milwaukee v. K.F.,* 145 Wis. 2d 24, 40–41, 426 N.W.2d 329 (1988); *see also Broadrick,* 413 U.S. at 615–16; *City of Milwaukee v. Wroten,* 160 Wis. 2d 207, 226–27, 466 N.W.2d 861 (1991).

¶ 38. The First Amendment doctrine of substantial overbreadth is a judicially-created, largely prophylactic doctrine designed to prevent the chilling of constitutionally protected expression. *See* Richard H. Fallon, Jr., *Making Sense of Overbreadth,* 100 Yale L. J. 853, 855 (1991). As the majority notes, the overbreadth doctrine is a limited exception to the traditional rule of third-party standing that "a person to whom a statute may be constitutionally applied will

not be heard to challenge the statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court." *Broadrick*, 413 U.S. at 610–11; *see also Board of Airport Comm'rs of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 574 (1987); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503–04 (1985); *Thiel*, 183 Wis. 2d at 520. This traditional rule of third-party standing reflects the conviction that "under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Broadrick*, 413 U.S. at 610–11 (citing *Younger v. Harris*, 401 U.S. 37, 52 (1971)). Courts therefore recognize exceptions to this rule only when there exists "weighty countervailing policies." *Id.* at 611 (quoting *United States v. Raines*, 362 U.S. 17, 22–23 (1960)).

¶ 39. Because of the wide-ranging effects of the overbreadth doctrine,[1] a reviewing court must view the doctrine as "manifestly strong medicine" that should be employed only "sparingly, and only as a last resort." *Broadrick*, 413 U.S. at 613; *see New York v. Ferber*, 458 U.S. 747, 769 (1982); *Thiel*, 183 Wis. 2d at 521; *City of Milwaukee v. Nelson*, 149 Wis. 2d 434, 452, 439 N.W.2d 562 (1989). Courts, in consequence, have established two specific limitations to applying the overbreadth doctrine. First, a facial challenge to an ordinance will

---

[1] As the United States Supreme Court has explained, the consequence of our departing from traditional rules of standing in the First Amendment area is that any enforcement of a challenged statute may be totally forbidden, "not because [the litigants'] own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

not succeed when a limiting construction is available to maintain the legislation's constitutional integrity. *See Thiel*, 183 Wis. 2d at 521 (citing *Broadrick*, 413 U.S. at 613); *see also* Fallon, 100 Yale L. J. at 863. Second, where conduct and not merely speech is involved, courts including this one have uniformly stated that "the overbreadth of a statute or ordinance *must not only be real, but substantial as well,* judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615 (emphasis added); *see also Thiel*, 183 Wis. 2d at 521; *Wroten*, 160 Wis. 2d at 226; *K.F.*, 145 Wis. 2d at 40–41; Fallon, 100 Yale L. J. at 863. The majority here briefly lists, but essentially jettisons, these well-established limitations on the overbreadth doctrine.

¶ 40.   First, not only does the majority refuse to provide a narrowing construction of the Ordinance, it accepts the broadest possible construction of that ordinance. This court has a duty to interpret an ordinance, as it would a statute, by applying a limiting construction to that ordinance, if one is available, to preserve its constitutionality. *See K.F.*, 145 Wis. 2d at 47. "A statute challenged as unconstitutionally overbroad can be 'cured' by means of judicial interpretation, which provides for a narrowing and validating construction of the law." *Thiel*, 183 Wis. 2d at 522. While the majority states that it is "cognizant" of its obligations, it concludes that no narrowing construction is available because to provide one it "would essentially be required to rewrite the Ordinance in its entirety." Majority op. at 31.

¶ 41.   Contrary to the majority's suggestion, the language of Ordinance 10 can easily be construed to preserve its constitutionality, without having to rewrite the ordinance in its entirety. The effective lan-

guage of Ordinance 10 provides that "[t]here shall be no public nudity at a public licensed establishment." The majority construes this language to encompass both public and private nudity and to proscribe both animate nudity and the displaying or exhibiting of inanimate nudes, either in pictures or sculptures. The majority's broad construction of Ordinance 10 contravenes the common sense understanding of "public nudity."

¶ 42.   A closer "examination of the verbiage" of Ordinance 10 shows that such a broad construction is neither necessary nor warranted. *Wroten*, 160 Wis. 2d at 227. Based on "the common sense meaning and purpose of the words employed" in the Ordinance, *Ann M.M. v. Rob S.*, 176 Wis. 2d 673, 679, 500 N.W.2d 649 (1993),[2] the court could reasonably construe the Ordinance to prohibit only animate public nudity at establishments licensed by the Town of Trenton to sell alcohol.

¶ 43.   First, Ordinance 10 can be read to prohibit only animate nudity. The Ordinance defines the word "nudity" as "the showing or exposing" of certain parts or areas of the human anatomy "with less than a full opaque covering." Not expressly included in this definition are the acts of displaying, exhibiting, televising, sculpting, or drawing inanimate nudes. Had the Town of Trenton wished to proscribe such conduct it could have added the appropriate language to the definition of "nudity." It did not do so, and neither should we.

---

[2] The court's task in this case is no different than in construing any statute; the court must apply the ordinary and approved definitions of the language used by the Town "to find the common sense meaning and purpose of the words employed" in Ordinance 10. *Ann M.M. v. Rob S.*, 176 Wis. 2d 673, 679, 500 N.W.2d 649 (1993).

¶ 44. Although the words "showing" and "exposing" may be general and somewhat imprecise, they need not be construed to include the displaying or exhibiting of pictures or sculptures. As used in the context of Ordinance 10, the word "show" is commonly defined as "to reveal (oneself) as in one's behavior or condition," *The American Heritage Dictionary* 1671 (3d ed. 1992), and the word "expose" as "to make visible" or "to make known." *Id.* at 646.[3] Applying the ordinary and accepted definitions of the words "show" and "expose," the court could reasonably construe the word "nudity," as defined by the Ordinance, as including only those live acts performed by a person to reveal or make visible certain parts of his or her anatomy. Under this definition, "nudity" does not include inanimate displays, exhibits, or programs including nude persons.

¶ 45. Second, Ordinance 10 does not prohibit nudity in all forms; it prohibits only "public nudity." The majority construes the Ordinance as prohibiting both public and private nudity, including the situation where consenting adults are nude in a private hotel room. This broad construction is inconsistent with a reasonable reading of the express language in Ordinance 10.

¶ 46. Although the word "public," as used in the context of "public nudity", is not defined by the Ordinance,[4] the word is commonly understood to mean "to

---

[3] In the absence of statutory definitions, this court construes all words "according to their common and approved usage[,]" which may be established by dictionary definitions. *See Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995) (quoting *State v. Gilbert*, 115 Wis. 2d 371, 377–78, 340 N.W.2d 511 (1983)).

[4] The Ordinance does define the word "public" in the context of a "public licensed establishment." The definition offered,

reveal *to the public* a previously unknown or secret piece of information" or "participated in or attended *by the people or community*." *Id.* at 1464 (emphasis added). Applying either definition of "public" to the other defined language of the Ordinance, the phrase "public nudity" can reasonably be construed to include only a person's act or acts which reveal to the members of the general public his or her nude body, or specified parts or areas thereof. Under this available construction, "public nudity" does not include the private conduct of consenting adults in private rooms where the general public is not invited or allowed to attend or participate in such conduct.

¶ 47. This construction of "public nudity" is supported by the language found in both Exceptions A and B of the Ordinance. Under the direction of Exception A, a court is precluded from construing Ordinance 10 to restrict the proper use of a public bathroom unless that room is used for "any sexual or exhibitionist purpose to or *in front of or adjacent to other persons*." (Emphasis added.) Similarly, Exception B specifically directs that the Ordinance is not to be interpreted to prevent activities in a privately owned or rented room if the person owning or renting that room "has not invited or allowed members of the public, who are not immediate family members, to be at such location." Although not per-

---

however, could not reasonably apply to the phrase "public nudity." Since it is a basic rule of statutory construction that courts give effect to every word of a statute so that no portion of the statute is rendered superfluous, *see Lake City v. City of Mequon*, 207 Wis. 2d 155, 162, 558 N.W.2d 100 (1997), this court must give effect to the word "public" as used in the context of "public nudity."

fectly drafted,[5] the language of Exceptions A and B of the Ordinance evince the Town's intent not to prohibit private conduct by consenting adults in private rooms unless members of the public are invited or allowed to attend or participate in such conduct.

¶ 48.   Third, Ordinance 10 does not reach all animate public nudity; it prohibits such nudity only at "public licensed establishments." The majority is correct in stating that the Ordinance does not specifically limit such establishments to places of accommodation or amusement licensed to sell alcohol. To be consistent with the language and purpose of Ordinance 10, however, the court should construe Ordinance 10 to reach only establishments licensed to sell alcohol.

¶ 49.   Ordinance 10 applies only to a "licensed establishment." The only license to which the Ordinance specifically refers is the license to sell alcohol, which the Town is authorized to issue and regulate under Wis. Stat. § 125.10. The record does not describe any other type of establishment licensed by the Town of Trenton. In addition, the Town concedes that the purpose of enacting Ordinance 10 was not to protect its

---

[5] As counsel for the Respondent conceded at oral argument before this court, the language "who are not immediate family members" in Exception B adds some ambiguity to the scope of the Ordinance. Read in the specific context of Exception B, however, the purpose of this language is clear. The language qualifies only the field of persons considered "members of the public." Simply because immediate family members are not considered members of the public under the Ordinance, the court should not construe this language to also mean that all persons who are not immediate family members are necessarily members of the public. Under the language of Exception B, a person's fiancee, for example, need not be considered a "member of the public" simply because he or she is not an immediate family member.

community from the secondary effects usually associated with adult entertainment establishments; the purpose was to protect against such secondary effects only as they are enhanced by the sale and consumption of alcohol. That this is the limited purpose of Ordinance 10 is supported by the facts in this case. During this litigation, the Town has continued to allow the Petitioner to offer at its public establishment nude and semi-nude dancing, as long as the Petitioner does not also serve or sell alcoholic beverages at that establishment. In light of the language, purpose, and the Town's enforcement of Ordinance 10, the court could reasonably construe the Ordinance to reach only establishments licensed to sell alcohol.

¶ 50.　In short, the court can and should construe Ordinance 10 as prohibiting only animate public nudity at establishments licensed by the Town to sell alcohol. Adopting this narrow construction would eliminate most of the concerns raised in the hypothetical situations posed by the majority and by individual justices during oral arguments. Under this construction, Ordinance 10 would not prohibit two non-related adults from being nude in the privacy of an art studio, a hotel room, or any other private room; nor would it prevent "Joe's Tap" from hanging a picture of a playmate on its wall; nor would it prohibit the "public exhibition of artwork or artifacts depicting nudity" or the "public display of a television program including brief nudity." Majority op. at 24–25.

¶ 51.　I recognize that the construction offered in this dissent is not the only possible construction of the language in Ordinance 10. It is, however, an available common sense reading of that language. It is not the duty of this court to point out technical flaws in an ordinance or to strike an ordinance due to its imprecise

language. Rather, this court has a duty to provide a narrowing construction of an ordinance if one is available. *See Thiel*, 183 Wis. 2d at 521. In this case one is available.

¶ 52. To bolster its broad reading of Ordinance 10, and to attack a more narrow reading, the majority, rather than analyzing the specific language of Ordinance 10, lobs empty assertions of "futility," "semantic convolutions," and "tortured conclusions." Majority op. at 26–27. In so doing the majority misconstrues the language of the Ordinance and mischaracterizes the arguments in this dissent. To clarify this dissent, it is necessary to address three such assertions cast by the majority.

¶ 53. The majority asserts that the Ordinance is overbroad largely because of its generalized terminology[6] and "its specific command that portions of the Ordinance be 'interpreted broadly.' " Majority op. at 25. The majority's use of the Ordinance's "specific command" is inaccurate and misleading. The clear import of the majority's reference to this specific command is

---

[6] The majority avoids any mention or analysis of the specific terms in the Ordinance that it considers so general as to cause the Ordinance to be overbroad. By refusing to focus on the specific language of the Ordinance, the majority evades the analysis that would uncover the flaw in its conclusion. The analysis the majority goes out of its way to avoid is really quite simple. Ordinance 10 prohibits "public nudity at a public licensed establishment." In finding the language of Ordinance 10 overbroad, the majority construes "nudity" to include the display and exhibit of artwork and artifacts; it construes "public nudity" to include private nudity; and it construes "licensed establishments" to include establishments other than those licensed to sell alcohol. Although I agree that the Ordinance could be construed this way, I do not accept the majority's position that a more narrow construction is somehow "tortured."

to establish the Town's legislative intent that the Ordinance be interpreted broadly.[7] The Ordinance, however, does not direct courts to interpret all its language and provisions broadly. The Ordinance directs courts to interpret broadly only those establishments considered "place[s] of accommodation or amusement." The Ordinance does not direct courts to interpret broadly the definition of "public nudity" or "licensed establishment." Despite the majority's assertion, the Ordinance does not contain a legislative "command" that its language be construed to prohibit nudity in all forms and in all public establishments.

¶ 54. The majority next states that this dissent "negates the plain language of the Ordinance and attempts to explain that the word 'showing' does not mean 'displaying' or 'exhibiting.' " Majority op. at 26–27. Again, the majority's statement is inaccurate and misleading. This dissent nowhere states or implies that the word "showing" cannot be construed broadly to include "displaying" or "exhibiting." On the contrary, it recognizes that a number of possible constructions of Ordinance 10 exist. One available dictionary definition of "showing," however, is provided which limits the definition of "nudity" to include only animate nudity. The apparent "futility" of this argument is at least matched by the majority avoidance of the issue. The

---

[7] *See* majority op. at 26 (stating "[w]e cannot apply a limiting construction of which contravenes the expressed intent of the Ordinance."); *Id.* at 27–28 (stating "the plain language of the Ordinance indicates an intent by the Town Board to apply the Ordinance in a far broader manner than acknowledged by the construed and severed interpretation of the dissent."); *Id.* at 28 (stating "the proffered constructions of the Ordinance are inconsistent with the broadly drafted terms and the purpose of the Ordinance.").

majority fails to show, as it must to support its reading of Ordinance 10, that the word "showing" *can only* be construed to include "displaying" and "exhibiting."

¶ 55. The majority then asserts that to limit the Ordinance's scope to establishments licensed to sell alcohol, the dissent must "strike and construe so much of the definition that little of the original definition of 'public' as used in 'public licensed establishment,' remains." Majority op. at 27. The majority then proceeds through an exercise of striking and inserting language into the Ordinance's definition of the term "public." The majority's creation and immediate destruction of this straw man argument is inaccurate and misleading. Despite the majority's assertion, this dissent does not suggest that Ordinance 10 does not apply to all "public licensed establishments." Rather, it argues only that the term *"licensed* establishments" can be construed to include all "public establishments," as defined by the Ordinance, that are *licensed* to sell alcohol. This dissent does not attempt to limit "public" establishments to "hotels, motels, resorts, restaurants, taverns, [licensed to serve alcohol]." Majority op. at 27–28.

¶ 56. Given this court's duty to find an ordinance constitutional if at all possible, it is unfortunate that the majority rests on an analysis as superficial as its reading of the Ordinance. Before admonishing the Town of Trenton to enact an ordinance that "means what it says," the majority should first read what it said.

¶ 57. Second, the majority, after conceiving a single impermissible application of the Ordinance, concludes that the overbreadth of the Ordinance is both real and substantial. This court has traditionally held that only a statute that is *substantially* overbroad

may be invalidated on its face. *See Thiel*, 183 Wis. 2d at 521; *Wroten*, 160 Wis. 2d at 226; *Nelson*, 149 Wis. 2d at 451; *K.F.*, 145 Wis. 2d at 40–41; *State v. Princess Cinema of Milwaukee*, 96 Wis. 2d 646, 656, 292 N.W.2d 807 (1980). Although this court has not defined the term "substantially overbroad," it has instructed that in a facial challenge to a law, the court's first task is "to determine whether the enactment *reaches a substantial amount* of constitutionally protected conduct." *K.F.*, 145 Wis. 2d at 41 (quoting *Houston v. Hill*, 482 U.S. 451 (1987)) (emphasis added). Similarly, the court has explained that although a court may consider hypothetical applications of a challenged ordinance, the court "will not deem a[n]. . .ordinance invalid because in some conceivable, but limited, circumstances the regulation might be improperly applied." *Id.* at 40; *see also Nelson*, 149 Wis. 2d at 452; *Brandmiller v. Arreola*, 199 Wis. 2d 528, 546–47, 544 N.W.2d 894 (1996).

¶ 58. This requirement of substantial overbreadth is derived directly from the purpose and nature of the doctrine. *See Ferber*, 458 U.S. at 772. "[W]ithout a substantial overbreadth limitation, review for overbreadth would be draconian indeed. It is difficult to think of a law that is utterly devoid of potential for unconstitutionality in some conceivable application." *Id.* at 772 n.27 (quoting Note, *The First Amendment Overbreadth Doctrine*, 83 Harv. L. Rev. 844, 859 and n.61 (1970)).

¶ 59. In *Ferber*, the United States Supreme Court upheld one section of New York's criminal statutes prohibiting persons from "knowingly promoting sexual performances by children under the age of 16 by distributing material which depicts such performances." *Ferber*, 458 U.S. at 749. The Court upheld the

regulation even though some protected expression, ranging from medical textbooks to pictorials in *The National Geographic*, "would fall prey to the statute." *Id.* at 773. The Court concluded that the impermissible applications of the statute would not amount to "more than a tiny fraction of the materials within the statute's reach." *Id.* Under these circumstances, the Court held that the regulation was "not substantially overbroad and. . .whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Id.* at 773–74 (quoting *Broadrick*, 413 U.S. at 615–16).

¶ 60.   Similarly, in *Broadrick*, the Court upheld a section of an Oklahoma law restricting the political activities of the state's civil servants. The Court recognized that the challenged law would prohibit covered employees from wearing political buttons and from displaying political bumper stickers on their vehicles. *See Broadrick*, 413 U.S. at 618. Although it acknowledged that such restrictions were impermissible, the Court concluded that the law need not be "discarded *in toto* because some person's arguably protected conduct may or may not be caught or chilled by the statute." *Id.*

¶ 61.   A regulation, therefore, should not be invalidated *in toto* for overbreadth unless it reaches " *a substantial number* of impermissible applications. . . ." *Ferber*, 458 U.S. at 771 (emphasis added). Simply conceiving of a single impermissible application of an ordinance is not sufficient to succeed on an overbreadth claim. *See K.F.*, 145 Wis. 2d at 41 (quoting *Hill*, 482 U.S. 451); *see also City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).

¶ 62.   For the purposes of this analysis, this dissent assumes, as does the majority, that the Town of

Trenton has a legitimate, substantial interest in protecting its community from the harmful secondary effects associated with adult entertainment establishments. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 581–84 (1991) (Souter, J., concurring); *see also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). In its overbreadth analysis, the court must therefore accept that the Town of Trenton can legitimately proscribe public nudity at adult entertainment establishments. *See Barnes*, 501 U.S. at 572 (1990); *Id.* at 580–81 (Scalia, J., concurring); *Id.* at 587 (Souter, J., concurring). Accordingly, whether the overbreadth of Ordinance 10 is substantial as well as real must be judged in relation to the "plainly legitimate sweep" upheld in *Barnes*. *Broadrick*, 413 U.S. at 615; *see also Wroten*, 160 Wis. 2d at 226; *K.F.*, 145 Wis. 2d at 40–41.

¶ 63.    As explained above, a narrow construction of Ordinance 10 would eliminate a number of hypothetical examples listed by the majority. If Ordinance 10 is construed to prohibit only animate public nudity, it would not chill the public exhibition of artwork or artifacts depicting nudity, or the public display of a television program including brief nudity. *See* majority op. at 24–25. Stripped of these arguably illegitimate applications, the majority is left with just one hypothetical situation upon which to conclude that Ordinance 10 is substantially overbroad. The majority argues that even under a narrow construction the Ordinance could be used to prohibit live artistic performances that do not implicate the secondary effects associated with barroom erotic nude dancing. Majority op. at 28–29. As this dissent has shown, simply conceiving of this single impermissible application of Ordinance 10 is not a sufficient basis upon which to invalidate the Ordinance. *See K.F.*, 145 Wis. 2d at 41;

*see also Brandmiller,* 199 Wis. 2d at 546–47; *Nelson,* 149 Wis. 2d at 452.[8]

¶ 64.   Even if the court decides here for the first time that one hypothetical application of an ordinance can result in substantial overbreadth, the majority's analysis fails. The last hypothetical situation posed by the majority is far from substantial. In effect, the majority invalidates Ordinance 10 *in toto* because a ballet troupe or other group someday may offer in the Town of Trenton Diaghilev's *L'apres midi d'un faune*

___

[8] To avoid the controlling authority of *City of Milwaukee v. K.F.,* 145 Wis. 2d 24, 40–41, 426 N.W.2d 329 (1988); *City of Milwaukee v. Nelson,* 149 Wis. 2d 434, 452, 439 N.W.2d 562 (1989); and *Brandmiller v. Arreola,* 199 Wis. 2d 528, 546–47, 544 N.W.2d 894 (1996), the majority counts each play, musical, and ballet to which the Ordinance someday may be applied as a separate impermissible application of that Ordinance. If this is the proper test under the substantial overbreadth doctrine, the United States Supreme Court clearly erred in *Broadrick,* 413 U.S. 601, by upholding the Oklahoma statute without first counting each political button, bumper sticker, and souvenir potentially affected by that statute. Similarly, it must have been an oversight that the Court in *New York v. Ferber,* 458 U.S. 747, 769 (1982), upheld the New York statute without first counting each magazine, pictorial, and textbook that could fall prey to that statute. The majority would have us believe that a town like Trenton cannot proscribe live nude dancing in its taverns if the performers also recite Shakespeare, play the trombone, or pirouette as they show their breasts, genitals, and buttocks to the audience. Such performances would certainly fall within the majority's "artistic gamut." Rather than strike the Ordinance in its entirety, the court should consider the application of the Ordinance to such performances on a case-by-case basis. No matter how creatively the majority counts, the application of the Ordinance to live nude performances at establishments licensed to sell alcohol yields but a single hypothetical application of that Ordinance.

(1912) or a similar performance including nudity. *See* majority op. at 29. In concluding that this single hypothetical is both real and substantial, the majority ignores the very limited reach of the Ordinance.

¶ 65.   The deterrent effect and any overbreadth of Ordinance 10 is necessarily limited to its reach. "While a sweeping statute, or one incapable of limitation, has the potential to repeatedly chill the exercise of expressive activity by many individuals, the extent of deterrence of protected speech can be expected to decrease with the declining reach of the regulation." *Ferber*, 458 U.S. at 772. Ordinance 10 does not deny absolutely the right of Trenton residents to attend, or the right of artists to offer, artistic performances involving live nudity. Ordinance 10 only prohibits a performer from appearing in a state of "nudity," as defined in the Ordinance, during an artistic performance at an establishment licensed by the Town of Trenton to sell alcohol. The Ordinance, therefore, does not bar performances involving nudity at theaters, performing arts centers, auditoriums, or other establishments as long as those establishments do not serve or sell alcohol. Perhaps I am wrong in my estimation of how often a ballet troupe or other group will perform in the nude at a tavern in the Town of Trenton, but I think it is fair to say that the legitimate scope of Ordinance 10 vastly exceeds the illegitimate.

¶ 66.   Contrary to the conclusion of the majority, any real and substantial overbreadth in Ordinance 10 can be cured by means of a narrowing judicial construction of its language. *See Thiel*, 183 Wis. 2d at 522. Whatever overbreadth remains after this narrowing construction "should be addressed through case-by-case analysis of the fact situations to which its sanctions, assertedly, may be applied." *Broadrick*, 413 U.S.

47

at 615–16. The majority has here employed the doctrine of substantial overbreadth superficially rather than sparingly and has swallowed it as an easy fix rather than as manifestly strong medicine. I therefore dissent.

¶ 67.   As to the issue of overbreadth, I would affirm the judgment of the circuit court for Pierce County.[9]

¶ 68.   I am authorized to state that Justice Jon P. Wilcox joins this dissenting opinion.

---

[9] By striking as facially overbroad the Town of Trenton's Ordinance 10, the majority has avoided, either by design or convenience, the tougher question presented by the case at bar: whether and to what extent the First Amendment protects nude and semi-nude, non-obscene dancing. I believe the court should have reached this issue.